DAVID EDELSTEIN, Appellant, v.
BANK OF NEW YORK MELLON, Respondent.

No. 57430

September 27, 2012 286 P.3d 249

*Law Office of Jacob Hafter & Associates* and *Jacob L. Hafter* and *Michael K. Naethe*, Las Vegas, for Appellant.

*Pite Duncan, LLP*, and *Gregg A. Hubley* and *Allison R. Schmidt*, Las Vegas, for Respondent.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, which arises out of Nevada's Foreclosure Mediation Program (FMP), we examine the note-holder and beneficial-interest status of a party seeking to foreclose. We conclude that, to participate in the FMP and ultimately obtain an FMP certificate[1] to proceed with the nonjudicial foreclosure of an owner-occupied residence, the party seeking to foreclose must demonstrate that it is both the beneficiary of the deed of trust and the current holder of the promissory note.

In determining whether the party seeking to foreclose in this case met those requirements, we also address whether, as is argued here, the designation of Mortgage Electronic Registration System,

---

[1]For a valid nonjudicial foreclosure sale to occur under NRS 107.080, a program certificate must be issued. NRS 107.086; *Holt v. Regional Trustee Services Corp.*, 127 Nev. 886, 892-93, 266 P.3d 602, 606 (2011).

Inc. (MERS), as the initial beneficiary of the deed of trust irreparably splits the promissory note and the deed of trust so as to preclude foreclosure. We conclude that when MERS is the named beneficiary and a different entity holds the promissory note, the note and the deed of trust are split, making nonjudicial foreclosure by either improper. However, any split is cured when the promissory note and deed of trust are reunified. Because the foreclosing bank in this case became both the holder of the promissory note and the beneficiary of the deed of trust, we conclude that it had standing to proceed through the FMP.

## FACTS AND PROCEDURAL HISTORY

In 2006, appellant David Edelstein executed a promissory note (the note) in favor of lender New American Funding, which provided Edelstein with a loan to buy a house. The note provided that "the Lender may transfer [the] [n]ote," and that "[t]he Lender or anyone who takes [the] [n]ote by transfer and who is entitled to receive payments under this [n]ote is called the 'Note Holder.'"

Edelstein and New American Funding also executed a deed of trust to secure the note, which named New American Funding as the lender, Chicago Title as the trustee, and MERS as the beneficiary. Specifically, the deed of trust described "MERS [as] a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." It also characterized "MERS [as] the beneficiary under this Security Instrument," and later characterized MERS as "[t]he beneficiary of this Security Instrument . . . (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." The deed of trust also stated that "Borrower understands and agrees that MERS holds only legal title to the Interests granted by Borrower in this Security Instrument," but that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ."

Subsequently, both the note and the deed of trust were transferred several times. With regard to the note, New American Funding created an allonge (the allonge),[2] endorsing the note to the order of Countrywide Bank, N.A. Countrywide Bank then endorsed the note to the order of Countrywide Home Loans, Inc.,

---

[2]An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further [e]ndorsements when the original paper is filled with [e]ndorsements." *Black's Law Dictionary* 1859 (9th ed. 2009). However, an "allonge is valid even if space is available on the instrument." *Id.*; *see also* NRS 104.3204(1) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").

which in turn endorsed the note in blank, as follows: "Pay to the order of _____ Without Recourse." Meanwhile, the deed of trust was also conveyed when MERS granted, assigned, and transferred "all beneficial interest" under the deed of trust to respondent Bank of New York Mellon (BNY Mellon); the conveyance language on the assignment stated that it was assigned and transferred "together with the [N]ote . . . ."[3] BNY Mellon designated ReconTrust Company as its new trustee, replacing Chicago Title. At the time of the mediation, ReconTrust physically possessed (1) the note, which was endorsed in blank, and (2) an assignment of the deed of trust, which named BNY Mellon as the beneficiary.

## The foreclosure mediation

Edelstein stopped paying on the note and consequently received a notice of default and election to sell; he subsequently elected to participate in the FMP.

Attending the July 2010 foreclosure mediation was Edelstein and his counsel, as well as counsel for BNY Mellon's loan servicer, Bank of America, who appeared as BNY Mellon's agent and representative. A Bank of America representative with purported authority to negotiate the loan participated by telephone. Bank of America provided certified copies of the note, endorsed in blank, the deed of trust and its assignment, and the substitution of trustee. It also provided a short sale proposal and a broker's price opinion.

After the mediation concluded without resolving the foreclosure issue, the mediator filed a report determining that "[t]he parties participated but were unable to agree to a loan modification or make other arrangements." Notably, the mediator did not report that the beneficiary or its representative failed to attend the mediation, failed to participate in good faith, failed to bring the required documents to the mediation, or did not have authority to mediate.

## The proceedings before the district court

On August 5, 2010, Edelstein, acting in proper person, filed a petition for judicial review with the district court, seeking a determination that BNY Mellon had participated in the mediation in bad faith and sanctions for statutory violations. He argued that BNY Mellon failed to "provide sufficient documents concerning the assignment of the mortgage note, deed of trust[,] and interest in the trust," and an appraisal or broker's price opinion. He further argued that BNY Mellon failed to "have the authority or access to a person with the authority" to modify the loan as required by NRS 107.086 because the "person representing [BNY Mellon]

---

[3]The MERS assignment is dated February 19, 2010, but the allonge and both endorsements are undated. Thus, it is unclear which event occurred first.

was not available to fully negotiate in good faith, and did not provide sufficient documentation that [BNY Mellon] held a legal claim to the beneficial proceeds of the [D]eed." Finally, he argued that BNY Mellon "failed to offer any modification offers." Edelstein requested sanctions from the district court based on "bad faith or failure to comply with statutory requirements."

Bank of America (on behalf of BNY Mellon) responded, generally disagreeing with each of Edelstein's arguments and also arguing that Edelstein's petition should not be considered because it was untimely. Edelstein, now represented by counsel, replied. He argued that because the allonge was an invalid "assignment," BNY Mellon was "required legally to show that it own[ed] those rights[,] or it ha[d] no legal authority to be attempting any foreclosure of the Edelstein home." Moreover, he contended that MERS' assignment of the deed of trust was invalid because MERS was a "sham" beneficiary. Edelstein also argued that his petition for judicial review was timely filed.

The parties reiterated their arguments in multiple hearings before the district court. Edelstein emphasized that "[BNY] Mellon ha[d] no standing in [the] matter" because "[t]here was no chain of title that [came] from New American [Funding] to the acting party, . . . [BNY] Mellon." The district court subsequently issued two separate orders. In the first order, the district court found that Edelstein timely filed his petition for judicial review and that BNY Mellon had properly appeared at the mediation. In its second order, the court found that BNY Mellon did not participate in bad faith, that the parties agreed to negotiate further, and that "absent a timely appeal, a Letter of Certification will issue." Edelstein now appeals.

## DISCUSSION

The primary issue on appeal is whether BNY Mellon may properly participate in the FMP and obtain an FMP certificate to proceed with foreclosure proceedings against Edelstein.[4] To resolve this issue, we first address the party-status requirements to pursue nonjudicial foreclosure in Nevada and next address whether BNY Mellon met those requirements in the context of NRS 107.086.

---

[4]BNY Mellon also argues that Edelstein's petition was untimely filed and should not have been considered by the district court. Edelstein actually received the statement by mail on or after July 20, 2010. Accordingly, his petition for judicial review was timely filed. FMR 6(2) (2010) (amended and renumbered as FMR 21(2) (effective March 1, 2011)).

The parties also dispute the appropriate standard of review and whether the program requirements must be strictly or substantially complied with, but the opening and answering briefs on appeal were filed before this court's decisions in *Leyva v. National Default Servicing Corp.*, 127 Nev. 470, 255 P.3d 1275 (2011), and *Pasillas v. HSBC Bank USA*, 127 Nev. 462, 255 P.3d 1281 (2011), which resolve both issues.

*Requirements to pursue nonjudicial foreclosure in Nevada*

Edelstein argues that "[t]he first step [within the FMP] requires the beneficiary of a deed of trust to prove to the homeowner that the beneficiary has a right to foreclose on the property." With some explanation, we agree.

### Background of nonjudicial foreclosures in Nevada

In Nevada, promissory notes on real estate loans are typically secured by deeds of trust on the property. "The note represents the right to the repayment of the debt, while the [deed of trust] . . . represents the security interest in the property that is being used to secure the note." Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence*, 12 Loy. J. Pub. Int. L. 177, 180 (2010). Thus, the borrower, or grantor, executes both the note and the deed of trust in favor of the lender, who was historically the beneficiary under both, and who names a trustee on the deed of trust "to assure the payment of the debt secured by the trust deed." 54A Am. Jur. 2d *Mortgages* § 122 (2009); *see also* NRS 107.028; NRS 107.080. The deed of trust may then be recorded. Former NRS 106.210.[5]

Considered a form of mortgage in Nevada,[6] the deed of trust does not convey title so as to allow the beneficiary to obtain the property without foreclosure and sale, but is considered merely a lien on the property as security for the debt, subject to the laws on foreclosure and sale. *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 298-99, 183 P.3d 895, 901-02 (2008); *Orr v. Ulyatt*, 23 Nev. 134, 140, 43 P. 916, 917-18 (1896). To enforce the obligation by nonjudicial foreclosure and sale, "[t]he deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). "Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment." *Id.*; *see also Leyva v. National Default Servicing Corp.*, 127 Nev. 470, 474-75,

[5]Prior to 2011, Nevada law provided that any assignment of the beneficial interest under a deed of trust "may" be recorded. Assembly Bill 284 amended this statute to now require that "any assignment of the beneficial interest under a deed of trust *must* be recorded." NRS 106.210 (emphasis added); 2011 Nev. Stat., ch. 81, § 1, at 327.

[6]NRS 0.037 states, "Except as used in chapter 106 of NRS and unless the context otherwise requires, 'mortgage' includes a deed of trust." For purposes of this opinion, the two terms will be used interchangeably.

255 P.3d 1275, 1279-80 (2011) (recognizing that the note and the deed of trust must be held by the same person to foreclose under NRS Chapter 107).

When the grantor defaults on the note, the deed-of-trust beneficiary can select the judicial process for foreclosure pursuant to NRS 40.430 or the "nonjudicial" foreclosure-by-trustee's sale procedure under NRS Chapter 107. *Nevada Land & Mtge. v. Hidden Wells*, 83 Nev. 501, 504, 435 P.2d 198, 200 (1967). At issue here, in a nonjudicial foreclosure, the trustee may sell the property to satisfy the obligation only after certain statutory requirements are met. NRS 107.080. First, the trustee must give notice by recording a notice of default and election to sell and serving the grantor with a copy of that notice. NRS 107.080(2)(c). The grantor then has a certain number of days in which to make good the deficiency. NRS 107.080(2)(a) and (b). After at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale. NRS 107.080(4). Once the sale is completed, title vests in the purchaser; upon court action, however, a sale may be voided if carried out without substantially complying with the statutory requirements. NRS 107.080(5). *See Rose v. First Federal Savings & Loan*, 105 Nev. 454, 456-57, 777 P.2d 1318, 1319 (1989).

In 2009, amid concerns with the rapidly growing foreclosure rate in this state, the Legislature enacted additional requirements that trustees must meet before proceeding with a nonjudicial foreclosure of owner-occupied housing. A.B. 149, 75th Leg. (Nev. 2009); *see Pasillas v. HSBC Bank USA*, 127 Nev. 462, 465, 255 P.3d 1281, 1284 (2011). The legislation increased the redemption period for owner-occupied housing, *see* NRS 107.080(2)(b), and it created the FMP, requiring the trustee to obtain and record an FMP certificate before proceeding with the foreclosure. *See* NRS 107.086.

Under the FMP, as described in *Pasillas*, the trustee must serve an election-of-mediation form with the notice of default and election to sell. 127 Nev. 462, 255 P.3d 1284; *see also Holt v. Regional Trustee Services Corp.*, 127 Nev. 886, 892, 266 P.3d 602, 606 (2011). If the grantor/homeowner elects to mediate, the beneficiary of the deed of trust or a representative must, in order for an FMP certificate to issue, "(1) attend the mediation; (2) mediate in good faith; (3) provide the required documents; or (4) if attending through a representative, have a person present with authority to modify the loan or access to such a person." *Pasillas*, 127 Nev. at 466, 255 P.3d at 1284 (citing NRS 107.086(5)); *see also Holt*, 127 Nev. at 893, 266 P.3d at 606. The documents re-

quired under the third item are designed to enable a determination both of whether a person with the required authority over the note is available and of whether the party seeking to foreclose is in fact "[t]he beneficiary of the deed of trust or a representative." NRS 107.086(4); *see Leyva*, 127 Nev. at 476-77, 255 P.3d at 1279 (explaining that "[t]he legislative intent behind requiring a party to produce the assignments of the deed of trust and mortgage note is to ensure that whoever is foreclosing actually owns the note and has authority to modify the loan," and that "[a]bsent a proper assignment of a deed of trust," one "lacks standing to pursue foreclosure proceedings" (internal quotations omitted)). In other words, the party seeking to obtain an FMP certificate through the FMP must show that it is the proper entity, under the nonjudicial foreclosure statutes, to proceed against the property. *Id.*

As explained above, to have standing to foreclose, the current beneficiary of the deed of trust and the current holder of the promissory note must be the same.[7] Here, the note, the deed of trust, and each assignment were produced at the mediation. NRS 107.086(4). However, as Edelstein argues, "[j]ust providing documents is not enough, as the documents need to demonstrate . . . authority, as proven through the authenticated documents, to foreclose on a home." Edelstein primarily argues that no documents were provided to demonstrate a clear chain of both the deed of trust and the note from New American Funding, the original lender, to BNY Mellon. Specifically, he asserts that because "MERS was merely a nominee and failed to provide evidence of its authority on behalf of . . . New American Funding to assign an interest in the deed of trust, [BNY Mellon] could not legally become beneficiary and noteholder for the purpose of participating in the mediation." In other words, Edelstein argues, BNY Mellon lacked "authority to foreclose" because the note was "split" from the deed of trust. To determine whether BNY Mellon had standing to foreclose, we consider whether the use of MERS ir-

---

[7]Indeed, in placing the onus of complying with the FMP requirements on the "beneficiary of the deed of trust," the Legislature considered the beneficiary of the deed of trust to be the same party as the note holder. For example, the Legislature expressed that it does "not want anyone who has no beneficial interest in the process to be required to attend the mediation. This is for the holder of the note." Hearing on A.B. 149 Before the Joint Commerce and Labor Comm., 75th Leg. (Nev., February 11, 2009) (testimony of Assemblywoman Barbara Buckley). Moreover, the Legislature has characterized the requirement that "the person who is foreclosing actually owns the note" as "an elemental legal step." *Id.* The program rules, at least as they existed at the time of Edelstein's mediation, likewise anticipated a single note and deed beneficiary, and they interchangeably used the term beneficiary of the deed of trust and lender. *See, e.g.*, former FMR 5(8)(a) (2010) (amended and renumbered as FMR 10(1)(a) (effective March 1, 2011)) (describing requirements for the "Beneficiary (lender)").

reparably "splits" the note and the deed of trust or otherwise impacts BNY Mellon's entitlement to enforce the note and the deed of trust.

### The effect of MERS

"MERS is a private electronic database . . . that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." *Cervantes*, 656 F.3d at 1038; *see also Jackson v. Mortgage Electronic*, 770 N.W.2d 487, 490 (Minn. 2009). Before discussing MERS' impact on this case, we explain how MERS works, as described in various reported decisions.

MERS was created in response to state recording laws governing deed of trust assignments. Many lenders sell all or part of their beneficial interests in home loan notes; they also change servicers. *Cervantes*, 656 F.3d at 1038. Indeed, "[i]t has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded." *Id.* at 1039. Correspondingly, the beneficial interest in the security—the deeds of trust—would also be assigned. In most states, however, lenders are required to record any changes to the deed of trust beneficiary and trustee. *Id.* As the selling of loans increased, "[t]his recording process became cumbersome to the mortgage industry," *id.*, often causing "confusion, delays, and chain-of-title problems." *Jackson*, 770 N.W.2d at 490. Thus, "MERS was designed to avoid the need to record multiple transfers of the deed." *Cervantes*, 656 F.3d at 1039.

Typically, when a loan is originated, "MERS is designated in the deed of trust as a nominee for the lender and the lender's 'successors and assigns,' and as the deed's 'beneficiary' which holds legal title to the security interest conveyed." *Id.* MERS' role in subsequent note transfers depends on whether or not the note is transferred to another MERS member or a non-MERS member. "If the lender sells or [transfers] the . . . [note] to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to [be the beneficiary of record] on the new lender's behalf." *Id.*; *see also In re Agard*, 444 B.R. 231, 248 (Bankr. E.D.N.Y. 2011) ("So long as the sale of the note involves a MERS Member, . . . [t]he seller of the note does not and need not assign the [deed of trust] because under the terms of that security instrument, MERS remains the holder of title to the [deed of trust], that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign." (internal quotations omitted)), *vacated in part by Agard v. Select Portfolio Servicing, Inc.*, Nos. 11-CV-1826(JS), 11-CV-2366(JS), 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012). "According to MERS, this system 'saves lenders time and money, and

reduces paperwork, by eliminating the need to prepare and record assignments when trading loans.' '' *Jackson*, 770 N.W.2d at 490. However, ''[a] side effect . . . is that a transfer of an interest in a mortgage [note] between two MERS members is unknown to those outside the MERS system.'' *Id.* Conversely, ''[i]f the . . . [note] is sold to a non-MERS member, the [assignment] of the deed from MERS to the new lender is recorded in county records and the [note] is no longer tracked in the MERS system.'' *Cervantes*, 656 F.3d at 1039.

A representative from MERS testified before a bankruptcy court that its ''members often wait until a default or bankruptcy case is filed to have a mortgage or deed of trust assigned to them so that they can take steps necessary to seek stay relief and/or to foreclose.'' *In re Tucker*, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010). In general, ''[t]he reason they wait is that, if a note is paid off eventually, as most presumably are, MERS is authorized to release the [deed of trust] without going to the expense of ever recording any assignments.'' *Id.*

### *The use of MERS does not irreparably split the note and the deed of trust*

Edelstein contends that MERS ''is merely a nominee or agent that cannot act without authorization by its principal,'' and that the use of MERS irreparably splits the note and the deed of trust, thereby divesting BNY Mellon of ability to foreclose or to modify the loan. He further argues that ''[a]ny actions by MERS with respect to the mortgage note or deed of trust would be ineffective.'' Because nothing in Nevada law prohibited MERS' actions, we reject Edelstein's argument and examine the two more common approaches taken by other jurisdictions to resolve the issue of whether splitting a promissory note and a deed of trust is irreparable or fatal to a beneficiary's entitlement to enforce the note and the deed of trust.[8]

---

[8]We recognize that there exist other approaches to this issue. Each state must individually determine whether this system designed to create a national electronic promissory note tracking system comports with state law concerning both promissory notes and title to real property. *See Bain v. Metropolitan Mortg. Group, Inc.*, 285 P.3d 34 (Wash. 2012) (holding that MERS is not a deed of trust beneficiary for failure to meet Washington's statutory requirement that a beneficiary of a deed of trust must hold the promissory note and rejecting the proposition that phrase nominee creates an agency relationship between MERS and note holders); *Niday v. GMAC Mortgage*, 284 P.3d 1157 (Or. Ct. App. 2012) (holding that the secured party note holder is always the beneficiary of the deed of trust and rejecting MERS' standing in nonjudicial foreclosure); *U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 53-54 (Mass. 2011) (discussing MERS' standing in foreclosure proceedings).

### The traditional rule

Under the traditional rule, a court need follow only the ownership of the note, not the corresponding deed of trust, to determine who has standing to foreclose. Specifically, "when a note secured by a mortgage is transferred, 'transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.'" *In re Vargas*, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008) (quoting *Carpenter v. Longan*, 83 U.S. 271, 275 (1872)). " 'The [deed] can have no separate existence.'" *Id.* at 517 (quoting *Carpenter*, 83 U.S. at 275). Put another way, " 'an assignment of the note carries the [deed] with it, while an assignment of the latter alone is a nullity.' While the note is 'essential,' the [deed] is only 'an incident' to the note." *Id.* (quoting *Carpenter*, 83 U.S. at 274). Thus, under the traditional rule, splitting the note and the deed of trust is impossible. The holder of the note always has both.

Pursuant to the traditional rule, MERS' "assignment of the deed of trust separate from the note" would have no force. *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623-24 (Mo. Ct. App. 2009) (explaining that "MERS never held the promissory note, thus its assignment of the deed of trust . . . separate from the note had no force"). Adopting the traditional rule would be inconsistent with our holding in *Leyva v. National Default Servicing Corp.*, however, in which we explained that "[t]ransfers of deeds of trust and mortgage notes are distinctly separate." 127 Nev. 470, 476, 255 P.3d 1275, 1279 (2011). Indeed, to foreclose, one must be able to enforce *both* the promissory note *and* the deed of trust. *Id.*; NRS 107.086(4). Under the traditional rule, entitlement to enforce the promissory note would be sufficient to foreclose; it would be superfluous to then require one to separately prove that a previous beneficiary "properly assigned its interest in land via the deed of trust" by requiring the new beneficiary "to provide a signed writing . . . demonstrating that transfer of interest." *Leyva*, 127 Nev. at 477, 255 P.3d at 1279. Accordingly, we decline to adopt the traditional rule and instead consider the Restatement approach.

### The Restatement approach

Under the Restatement approach, a promissory note and a deed of trust are automatically transferred together unless the parties agree otherwise. Specifically, "[a] transfer of an obligation secured

by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise." Restatement (Third) of Prop.: Mortgages § 5.4(a) (1997). Similarly, "[e]xcept as otherwise required by the Uniform Commercial Code, a transfer of a [deed of trust] also transfers the obligation the [deed of trust] secures unless the parties to the transfer agree otherwise." *Id.* § 5.4(b). Thus, unlike the traditional rule, a transfer of either the promissory note or the deed of trust generally transfers both documents. The Restatement also diverges from the traditional rule in that it permits the parties to separate a promissory note and a deed of trust, should the parties so agree.

The Restatement notes that "[i]t is conceivable that on rare occasions a mortgagee will wish to disassociate the obligation and the [deed of trust], but that result should follow only upon evidence that the parties to the transfer so agreed. The far more common intent is to keep the two rights combined." *Id.* § 5.4 cmt. a. This is because, as we have discussed, both the promissory note and the deed must be held together to foreclose; "[t]he [general] practical effect of [severance] is to make it impossible to foreclose the mortgage." *Id.* § 5.4 cmt. c; *see also Cervantes*, 656 F.3d at 1039.

In this case, New American Funding was the initial holder of the note, whereas MERS was characterized in the deed of trust as "a separate corporation that is acting solely as a *nominee* for Lender and Lender's successors and assigns." (Emphasis added.) The deed of trust also stated that "MERS is the *beneficiary* under this Security Instrument." (Emphasis added.) When interpreting a written agreement between parties, this court "is not at liberty, either to disregard words used by the parties . . . or to insert words which the parties have not made use of. It cannot reject what the parties inserted, unless it is repugnant to some other part of the instrument." *Royal Indem. Co. v. Special Serv.*, 82 Nev. 148, 150, 413 P.2d 500, 502 (1966) (internal quotations omitted). Thus, we examine the effect of designating MERS both as a nominee for New American Funding and its successors and assigns, and as a beneficiary of the deed of trust. Other courts have held that MERS' designation as nominee "is more than sufficient to create an agency relationship between MERS and the Lender and its successors." *In re Tucker*, 441 B.R. at 645; *In re Martinez*, 444 B.R. 192, 205-06 (Bankr. D. Kan. 2011) (concluding that based on the language in the relevant documents giving MERS a role as "nominee" for "[the lender] and its successors and assigns, . . . sufficient undisputed evidence [was presented] to establish that MERS was acting as an agent," and that the choice of the word " 'nominee,' rather than 'agent,' does not alter the relationship between the[ ] . . . parties, especially given the fact that the two terms

have nearly identical legal definitions''); *Cervantes*, 656 F.3d at 1044 (explaining MERS' role as an agent).

We agree with the reasoning of these jurisdictions and conclude that, in this case, MERS holds an agency relationship with New American Funding and its successors and assigns with regard to the note. Pursuant to the express language of the deed of trust, ''MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . .'' Accordingly, MERS, as an agent for New American Funding and its successors and assigns, had authority to transfer the note on behalf of New American Funding and its successors and assigns. *See generally Leyva*, 127 Nev. at 477-79, 255 P.3d at 1279-80 (discussing ''[t]he proper method of transferring . . . a mortgage note'').

The deed of trust also expressly designated MERS as the beneficiary; a designation we must recognize for two reasons. First, it is an express part of the contract that we are not at liberty to disregard, and it is not repugnant to the remainder of the contract. *See Royal Indem. Co.*, 82 Nev. at 150, 413 P.2d at 502. In *Beyer v. Bank of America*, the United States District Court for the District of Oregon examined a deed of trust which, like the one at issue here, stated that ''MERS is the beneficiary under this Security Instrument.'' 800 F. Supp. 2d 1157, 1160-62 (D. Or. 2011). After examining the language of the trust deed and determining that the deed granted ''MERS the right to exercise all rights and interests of the lender,'' the court held that ''MERS [is] a proper beneficiary under the trust deed.'' *Id.* at 1161-62. Further, to the extent the homeowners argued that the lenders were the true beneficiaries, ''the text of the trust deed contradicts [their] position.'' *Id.* at 1161; *accord Reeves v. ReconTrust Co., N.A.*, 846 F. Supp. 2d 1149 (D. Or. 2012). Similarly here, the deed of trust's text, as plainly written, repeatedly designated MERS as the beneficiary, and we thus conclude that MERS is the proper beneficiary. Second, it is prudent to have the recorded beneficiary be the actual beneficiary and not just a shell for the ''true'' beneficiary. In Nevada, the purpose of recording a beneficial interest under a deed of trust is to provide ''constructive notice . . . to all persons.''[9] NRS 106.210. To permit an entity that is not really the beneficiary to record itself as the beneficiary would defeat the purpose of the recording statute and encourage a lack of transparency.

___

[9]As noted earlier, Nevada law changed in 2011 to now require that ''any assignment of the beneficial interest under a deed of trust *must* be recorded.'' NRS 106.210 (emphasis added); 2011 Nev. Stat., ch. 81, § 1, at 327.

However, whether designating MERS as the beneficiary on the deed of trust demonstrates an agreement to separate the promissory note from the deed of trust is an issue of first impression for this court.

Although we conclude that MERS is the proper beneficiary pursuant to the deed of trust, that designation does not make MERS the holder of the note. Designating MERS as the beneficiary does, as Edelstein suggests, effectively "split" the note and the deed of trust at inception because, as the parties agreed, an entity separate from the original note holder (New American Funding) is listed as the beneficiary (MERS). *See generally In re Agard*, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011). And a beneficiary is entitled to a distinctly different set of rights than that of a note holder. *See Cervantes*, 656 F.3d at 1039 (explaining that a "holder of [a] note is *only* entitled to repayment," whereas a "holder of [a] deed alone does not have a right to repayment," but rather, has the right "to use the property as a means of satisfying repayment" (emphasis added)); *Leyva*, 127 Nev. at 476-77, 255 P.3d at 1279 (explaining that while a deed of trust "is an instrument that 'secure[s] the performance of an obligation or the payment of any debt,'" a mortgage note is a negotiable instrument that entitles the note holder to a payment of debt (alteration in original) (quoting NRS 107.020)).

However, this split at the inception of the loan is not irreparable or fatal. "Separation of the note and security deed creates a question of what entity would have authority to foreclose, but does not render either instrument void." *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1375 (N.D. Ga. 2011). Rather, "[a]ssuming *arguendo*, that there was a problem created by the physical separation of the Security Deed from the Note, that problem vanishe[s]" when the same entity acquires both the security deed and the note. *In re Corley*, 447 B.R. 375, 384-85 (Bankr. S.D. Ga. 2011). Indeed, while entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan. *In re Tucker*, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010). Instead, "[a] promissory note and a security deed are two separate, but interrelated, instruments," *Morgan*, 795 F. Supp. 2d at 1374, and their transfers are also "distinctly separate," *Leyva*, 127 Nev. at 476, 255 P.3d at 1279.[10]

---

[10]The idea that various rights concerning real property may be severed and freely assigned without destroying such rights is not novel or unique. Indeed, real property is generally described as a bundle of rights. *See ASAP Storage, Inc. v. City of Sparks*, 123 Nev. 639, 173 P.3d 734 (2007). In other contexts of real property, it is commonly accepted that a right may be severed and later reunified. For example, the right to travel over a property may be carved out

Because the Restatement approach is more consistent with reason and public policy and with our recent holding in *Leyva*, we adopt the approach of the Restatement (Third) of Property and hold that MERS is capable of being a valid beneficiary of a deed of trust, separate from its role as an agent (nominee) for the lender. We further conclude that such separation is not irreparable or fatal to either the promissory note or the deed of trust, but it does prevent enforcement of the deed of trust through foreclosure unless the two documents are ultimately held by the same party. *Cervantes,* 656 F.3d at 1039. MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified. Applying these holdings to the facts of this case, we now address whether BNY Mellon was entitled to enforce both the deed of trust and the note.

*BNY Mellon is entitled to enforce the deed of trust and the note*[11]

In his petition in the district court, Edelstein requested sanctions based on his arguments that BNY Mellon did not have authority to foreclose and that it participated in the mediation in bad faith. The district court also refused to impose sanctions and authorized issuance of the FMP certificate. This court reviews a district court's factual determinations deferentially, *Ogawa v. Ogawa,* 125 Nev. 660, 668, 221 P.3d 699, 704 (2009) (explaining that a "district

---

by the creation of an easement, but if that easement is later transferred to the title holder, the easement merges back into the fee. *Breliant v. Preferred Equities Corp.,* 109 Nev. 842, 846-47, 858 P.2d 1258, 1261 (1993). This general concept is consistent with our holding here.

[11]Edelstein argues that there was no "written statement" proving Bank of America's authority to attend the mediation. Neither party provides evidence that BNY Mellon authorized Bank of America to enforce the note. *See generally In re Veal,* 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011); *see also* NRS 111.205(1) (requiring an agent negotiating an interest in real property to have written authority). However, BNY Mellon indicated at the hearing before the district court that Bank of America was BNY Mellon's servicer, and a servicer is a representative within the meaning of NRS 107.086(4). Additionally, in responding to Edelstein's petition for judicial review, counsel appearing on behalf of BNY Mellon described her law firm as "[a]ttorneys for Bank of America, duly authorized servicer for The Bank of New York Mellon," and she alleged that she was informed by Bank of America's representative attending the mediation that "he had full authority to negotiate the loan on behalf of [BNY Mellon]." Further, Edelstein informed the district court that he was making his payments to Bank of America, and "[t]he servicer of the loan collects payments from the borrower." *Cervantes,* 656 F.3d at 1039. We note that while a servicing agreement would have been helpful to discern the extent of Bank of America's authority in this mediation, production of such an agreement is not expressly required by statute or the program rules.

court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence''), and its legal determinations de novo. *Clark County v. Sun State Properties*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003). Absent factual or legal error, the choice of sanction in an FMP judicial review proceeding is committed to the sound discretion of the district court. *Pasillas v. HSBC Bank USA*, 127 Nev. 462, 468, 255 P.3d 1281, 1287 (2011).

To prove that a previous beneficiary properly assigned its beneficial interest in the deed of trust, the new beneficiary can demonstrate the assignment by means of a signed writing. *Leyva*, 127 Nev. at 476, 255 P.3d at 1279. Here, BNY Mellon claims that it can enforce the deed of trust because MERS assigned its beneficial interest in the deed of trust to BNY Mellon. Certified copies of the deed of trust and the subsequent assignment were produced at the mediation; thus, BNY Mellon is entitled to enforce the deed of trust.[12] With respect to the note, MERS also assigned its beneficial interest in the deed of trust ''[t]ogether with the note or notes therein . . .'' to BNY Mellon. Because we hold that MERS, as agent (nominee) for New American Funding's successors and assigns, can transfer the note on behalf of the successors and assigns, we conclude that this action also transferred the note to BNY Mellon. *See id.* at 479, 255 P.3d at 1281 (explaining that, without showing a valid negotiation, a party can establish its right to enforce the note by demonstrating a proper transfer).

Even independently of MERS' assignment, BNY Mellon was entitled to enforce the note. The Uniform Commercial Code, Article 3, governs transfers of negotiable instruments, like the note. *Leyva*, 127 Nev. at 477, 255 P.3d at 1279. Therefore, for a subsequent lender to establish that it is entitled to enforce a note, it must present ''evidence showing [e]ndorsement of the note either in its favor or in favor of [its servicer].'' *In re Veal*, 450 B.R. 897, 921 (B.A.P. 9th Cir. 2011); *see also Leyva*, 127 Nev. at 477, 255 P.3d at 1279.

When a note is endorsed to another party, Article 3 of the UCC permits a note to ''be made payable to bearer or payable to

---

[12]On appeal, Edelstein contends that the assignment of the deed of trust is invalid because the notary predates the date of the assignment. In this, and without citation to specific authority, Edelstein claims that the assignment was void. However, Edelstein did not raise this issue in the district court; thus, we need not address it on appeal. *See In re AMERCO Derivative Litigation*, 127 Nev. 196, 217-18 n.6, 252 P.3d 681, 697 n.6 (2011) (declining to consider an issue raised for the first time on appeal).

order," depending on the type of endorsement. *Leyva*, 127 Nev. at 478, 255 P.3d at 1280 (citing NRS 104.3109). Relevant here, "[w]hen endorsed in blank, an instrument becomes payable to bearer . . . ." NRS 104.3205(2). Further, "a note initially made payable 'to order' can become a bearer instrument, if it is endorsed in blank." *Bank of New York v. Raftogianis*, 13 A.3d 435, 439 (N.J. Super. Ct. Ch. Div. 2010); *see also* U.C.C. § 3-205 cmt. 2 (2004) (explaining that if "the holder of an instrument, intending to make a special [e]ndorsement, writes the words 'Pay to the order of' without . . . writing the name of the [e]ndorsee," the instrument becomes bearer paper). Here, New American Funding, the original lender, endorsed the note to Countrywide Bank, N.A., who then endorsed the note to Countrywide Home Loans, Inc.[13] Countrywide Home Loans endorsed the note, in blank, as follows: "Pay to the order of _____ Without Recourse." Thus, the note was bearer paper.

"If the note is payable to bearer, that 'indicates that the person in possession of the promise or order is entitled to payment.'" *Leyva*, 127 Nev. at 478, 255 P.3d at 1280 (quoting NRS 104.3109(1)(a)); *see also* NRS 104.3205(2) (explaining that an instrument endorsed in blank is payable to bearer and "may be negotiated by transfer of possession alone"); NRS 104.3201(2) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). This means that to be entitled to enforce the note, BNY Mellon would merely have to possess the note. *Cf. Leyva*, 127 Nev. at 478-79, 255 P.3d at 1280 (discussing the process to be entitled to enforce order paper).

At the time of the mediation, ReconTrust, BNY Mellon's trustee, physically possessed the note. Edelstein argues that because ReconTrust "was in possession, not [BNY Mellon]," ReconTrust was arguably "the holder and person entitled to enforce bearer paper." However, Edelstein did not raise this issue in the district court. *See In re AMERCO Derivative Litigation*, 127 Nev. 196, 217-18 n.6, 252 P.3d 681, 697 n.6 (2011) (declining to consider an issue raised for the first time on appeal). Accordingly, we conclude that because ReconTrust as trustee possessed the note, BNY Mellon, the beneficiary, was entitled to enforce it. *See generally Monterey S.P. Part. v. W.L. Bangham*, 777 P.2d 623, 627

___

[13]Edelstein argues in his reply brief that because the document merely says "Patty Arvielo and the term 'V.P.,'" not V.P. of New American Funding, it was an "anomalous endorsement and would not be sufficient to negotiate the note to Countrywide Home Loans, Inc." However, he does not make this argument in his opening brief; thus, we do not consider it. *See generally Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) (stating that this court need not consider issues raised for the first time in an appellant's reply brief).

(Cal. 1989) (explaining that "[b]ecause a deed of trust typically secures a debt owed the beneficiary, it is the beneficiary, not the trustee, whose economic interests are threatened when the existence or priority of the deed of trust is challenged," and noting that the beneficiary is the real party in interest); *accord In re Veal*, 450 B.R. at 917 (holding that Wells Fargo could not establish holder status because "it did not show that it or its agent had actual possession"); *cf.* NRS 104.9313 and UCC § 9-313, cmt. 3 "Possession" (explaining that principles of agency apply in determining actual possession in the UCC, and that where an agent of a secured party has physical possession of a note, the secured party has taken actual possession).

Because BNY Mellon was entitled to enforce both the note and the deed of trust, which were reunified,[14] we conclude that BNY Mellon demonstrated authority over the note and to foreclose, and thus, there was no abuse of discretion or legal error on the part of the district court.[15]

Accordingly, we affirm the judgment of the district court.

CHERRY, C.J., and DOUGLAS, SAITTA, GIBBONS, PICKERING, and PARRAGUIRRE, JJ., concur.

[14]Because it is not at issue in this case, we need not address what occurs when the promissory note and the deed of trust remain split at the time of the foreclosure. *See, e.g., U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 53-54 (Mass. 2011) (discussing what occurs in instances "where a note has been [transferred] but there is no written assignment of the [deed] underlying the note").

[15]Edelstein argues that BNY Mellon failed to act in good faith because it lacked authority and failed to produce adequate documents to establish its authority. Based on our holdings in this opinion, we reject his argument.