**Merly CS RIGER, Plaintiff,**

v.

**HOMETOWN MORTGAGE, LLC; National Default Servicing Corporation; and U.S. Bank, N.A., Defendants.**

**No. 3:14–cv–00462–LRH.**

United States District Court, D. Nevada.

Signed April 22, 2015.

Sheryl Serreze, Reno Law Group, LLC, Treva J. Hearne, Treva J. Hearne, Reno, NV, for Plaintiff.

## ORDER

LARRY R. HICKS, District Judge.

Before the Court is Plaintiff Merly CS Riger's ("Riger") Motion for Reconsideration of Order Granting Motion to Dismiss and Motion to Certify Question of Law to the Nevada Supreme Court. Doc. # 45.[1] Defendant U.S. Bank National Association ("U.S. Bank") filed an Opposition (Doc. # 46), to which Riger did not reply.

## I. Facts and Procedural Background

After purchasing the subject property with her then-husband, Riger recorded a Deed of Trust with the Washoe County Recorder's Office on April 26, 2004, naming Hometown Mortgage, LLC as the Lender, United Title of Nevada as Trustee, and requesting that all tax statements be sent to Wells Fargo Home Mortgage, Inc. Doc. # 3 ¶ 8. The National Default Servicing Corporation ("NDSC") recorded a Notice of Default ("NOD") on behalf of U.S. Bank on November 17, 2009. Id. ¶ 9. On December 9, 2009, a Substitution of Trustee from United Title to NDSC was executed, and Mortgage Electronic Registration Systems, Inc. ("MERS") executed a Corporation Assignment of Deed of Trust, which transferred to U.S. Bank all beneficial interest in the property owned by Riger. Doc. # 45 at 3; Doc. # 46 at 4. Because the property was used as rental property when the NOD was recorded, Defendants recorded a Certificate of Mediation on March 24, 2010, stating that no mediation was requested or required. Id. ¶ 10. U.S. Bank recorded a First Notice of Sale ("First NOS") on March 24, 2010. Id. ¶ 11.

On April 5, 2010, Riger filed suit against U.S. Bank and NDSC in the Second Judicial District Court, Washoe County, Nevada, claiming causes of action related to wrongful foreclosure. Doc. # 25, Ex. 10. Riger's complaint was merged with the *In re Mortgage Electronic Registration Systems Litigation,* and the class filed an Amended Master Complaint on June 4, 2011. Id., Ex. 11. The United States District Court for the District of Arizona dismissed the class' claims on October 3, 2011, and the Ninth Circuit affirmed the dismissal on June 12, 2014. Id., Ex. 12; id., Ex. 13.[2]

U.S. Bank recorded a Second Notice of Sale ("Second NOS") on May 15, 2014, and scheduled foreclosure for August 25, 2014. Doc. # 3 ¶ 12. By the time of the Second

---

1. Refers to the Court's docket number.

2. In the January 14, 2015 Order, the Court rejected the argument that Riger's present lawsuit was barred by the doctrine of claim preclusion. Doc. # 44 at 4–5.

NOS, Riger had divorced her husband and moved into the property as her principal residence. *Id.* ¶ 13. Riger attempted to elect mediation upon receipt of the Second NOS, but her request was returned by Nevada State Foreclosure Mediation without explanation. *Id.* ¶ 15. NDSC conducted a foreclosure sale on the property at 11:00 a.m. on August 25, 2014. *Id.* ¶ 21. An Assignment of Deed of Trust was recorded on August 25, 2014, at 2:09 p.m., which assigned the deed from MERS to U.S. Bank. *Id.* ¶ 20.

Riger filed this Complaint and recorded a lis pendens on September 3, 2014. *Id.* The Complaint stated five causes of action: (1) violations of NRS § 107.080; (2) actual fraud; (3) violations of the Nevada Deceptive Trade Practices Act; (4) breach of the implied covenant of good faith and fair dealing; and (5) quiet title. *Id.* U.S. Bank filed its Motion to Dismiss on November 7, 2014. Doc. # 24. In her Opposition, Riger requested that the Court grant leave to amend to file a First Amended Complaint, and attached the proposed amended complaint. The Amended Complaint excluded Riger's second through fourth claims, and only alleged causes of action for quiet title and violations of NRS § 107.080. Doc. # 37, Ex. 1. The Court granted U.S. Bank's Motion to Dismiss on January 14, 2015, and denied Riger's request for leave to amend because amendment would be futile. Doc. # 44.

## II. Discussion

Riger argues first that the Court should reconsider its Order dismissing her deficient foreclosure claim under NRS § 107.080. Second, Riger argues—for the first time—that her deficient foreclosure action hinges on an unsettled question of Nevada law, and requests that the Court certify this question of law to the Nevada Supreme Court.

### A. Motion to Reconsider

 Upon motion by a party within twenty-eight days of the entry of judgment, the court may alter or amend its findings under Federal Rule of Civil Procedure 59(e). A party can also seek reconsideration under Federal Rule of Civil Procedure 60(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir.2003). District courts have discretion regarding whether to grant a motion to amend under Rule 59(e) or 60(b). *Wood v. Ryan,* 759 F.3d 1117, 1121 (9th Cir.2014).

Riger's Motion for Reconsideration centers on the assertion that the Court erred by treating her deficient foreclosure claim as waived. However, the Court did not treat her deficient foreclosure claim under NRS § 107.080 as waived, and directly addressed the merits of that claim in the January 14, 2015 Order. Doc. # 44 at 6–7. Riger is correct, however, that the Court inadvertently believed that Riger did not preserve a portion of her deficient foreclosure claim, based on the argument that U.S. Bank was not acting as a Trustee at the time of the foreclosure sale. *See id.* at 7 n. 3. Accordingly, the Court has reviewed the prior order, the parties' briefs, and relevant case law, and addresses the issue of U.S. Bank's Trustee status at the time of the NOD in this Order.

██ "In a nonjudicial foreclosure, the trustee may sell the property to satisfy the obligation only after certain statutory requirements are met." *Edelstein v. Bank of N.Y. Mellon,* —— Nev. ——, 286 P.3d 249, 254–55 (2012). These requirements include:

> First, the trustee must give notice by recording a notice of default and election to sell and serving the grantor with a copy of that notice. NRS 107.080(2)(c). The grantor then has a certain number of days in which to make good the deficiency. NRS 107.080(2)(a) and (b). After at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale. NRS 107.080(4).

*Id.* at 255. A sale can be voided, however, if it was "carried out without substantially complying with the statutory requirements." *Id.* (citing NRS § 107.080(5)). For owner-occupied properties, a sale cannot be recorded unless the trustee records a certificate stating that "no mediation is required" or that "mediation has been completed." NRS § 107.086(2)(d)(1)-(2). The statute defines "owner-occupied housing" as "housing that is occupied by an owner as the owner's primary residence." NRS § 107.086(15)(e).

██ Riger argues that "NDSC was not the properly substituted trustee when the NOD and mediation notices were sent to [Riger], violating N.R.S. § 107.080(5)." Doc. # 45 at 9. NRS § 107.080(5) states that a foreclosure is void if the "trustee or other person authorized to make the sale does not substantially comply with the provisions" of NRS § 107.080. Riger argues that her foreclosure was therefore defective for failure to comply with NRS § 107.080 because "NDSC had no standing to issue the NOD and the mediation notices and MERS never 'ratified' those actions." Doc. # 45 at 10. Indeed, NDSC

was not substituted as Trustee until December 9, 2009, approximately three weeks after NDSC recorded a NOD on Riger's property. However, the fact that NDSC was substituted as Trustee shortly after it recorded a NOD on U.S. Bank's behalf does not establish that the foreclosure was deficient under NRS § 107.080. In other cases in which NDSC was substituted as trustee after recording a notice of default or sale, the United States District Court for the District of Nevada has held that such a timeline is "fairly common and not improper in foreclosure." *Wensley v. First Nat'l Bank of Nev.,* 874 F.Supp.2d 957, 965 (D.Nev.2012). Moreover, "Nevada law [does not] require a substitution of trustee be recorded prior to a notice of default." *Swapp v. Wells Fargo Bank, N.A.,* No. 2:12–cv–0179, 2012 WL 5989498, at *4 (D.Nev. Nov. 29, 2012).

Furthermore, the record indicates that MERS ratified NDSC's issuance of the NOD by subsequently recording the Substitution of Trustee document. "When a beneficiary ratifies the actions of its agent before it is properly substituted, that ratification cures any defect in the filing." *Hickerson v. Wells Fargo Bank, N.A.,* No. 3:11–cv–0812, 2012 WL 194616, at *2 (D.Nev. Jan. 20, 2012). Subsequent recording of a Substitution of Trustee constitutes valid ratification. *See Wensley,* 874 F.Supp.2d at 965 ("NDSC's formal substitution as trustee after signing the notice as an agent appears to show, at the least, ratification of the previously-claimed agency."). The Court therefore finds that the NDSC's action sending the NOD was subsequently ratified by MERS and U.S. Bank. Accordingly, the Court's inadvertent failure to consider Riger's argument that NDSC was not a valid trustee when it sent the NOD is not grounds for reconsideration because the NOD was ratified, and recording the substitution of NDSC as trustee after the NOD does not establish

deficient foreclosure, and the NOD was subsequently ratified.

 Riger also has not identified compelling reasons for the Court to reconsider denial of her Motion to Amend. The court must grant leave to amend "when justice so requires." Fed.R.Civ.P. 15(a)(2). If the court grants a motion to dismiss, "[t]he standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 701 (9th Cir. 1990). The Court will generally only decline to grant leave to amend if the party opposing amendment shows "bad faith, undue delay, prejudice to the opposing party, futility of amendment," or that the plaintiff has previously amended the complaint without healing its defects. *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir.2011) (citing *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir.2004)). The Court properly denied Riger's Motion to Amend as futile because Riger cannot establish that U.S. Bank had a duty to mediate when the NOD was filed—because the unit was not owner-occupied—or that the foreclosure was deficient because the substitution of NDSC as trustee was not recorded until after the NOD. As a result, amendment would be futile because the proposed amended complaint attached as an exhibit to Riger's motion still fails to state a claim upon which relief can be granted. *See* Doc. # 37, Ex. 1.

## B. Motion to Certify Question of Law

Riger also moved the Court to certify a question of law to the Nevada Supreme Court: "Does the requirement to mediate under NRS 107.086 on owner-occupied properties attach to the Notice of Default or to the exercise of the power of sale?" Doc. # 45 at 13.

 Nevada Rule of Appellate Procedure 5 grants the Nevada Supreme Court the power to "answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or of the District Columbia, a United States District Court, or a United States Bankruptcy Court." The United States Supreme Court has acknowledged that "certification of novel or unsettled questions of state law for authoritative answers by a State's highest court ... may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 77, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)). Classification is not mandatory, and "when a federal court confronts an issue of state law which the state's highest court has not addressed, the federal court's task typically is to predict how the state's highest court would decide the issue." *Carolina Cas. Ins. Co. v. McGhan,* 572 F.Supp.2d 1222, 1225 (D.Nev.2008). "When a party requests certification for the first time after losing on the issue, that party must show 'particularly compelling reasons' for certifying the question." *Id.* at 1226 (quoting *Complaint of McLinn,* 744 F.2d 677, 681 (9th Cir.1984)).

This Motion relates to the Court's determination that defendants did not have a duty to mediate prior to foreclosing on Riger's property because it was not owner-occupied at the time of the NOD. Riger's Complaint states that for owner-occupied property, the trustee must comply with NRS § 107.068(2)(d), which requires a certificate stating that no mediation is required or that mediation has been completed. In its Order entered on January 14, 2015, the Court held:

[T]he requirement to mediate only attaches to the NOD, and the property was not owner-occupied when the NOD

was filed on November 17, 2009. Nevada law only recognizes a statutory mediation requirement for ·owner-occupied properties, and notes that mediation must be requested within thirty days of the NOD. *See Pasillas v. HSBC Bank USA,*· 255 P.3d 1281, 1284 (Nev.2011) ("The program requires that a trustee seeking to foreclose on an owner-occupied residence provide an election-of-mediation form along with the notice of default and election to sell."); NRS § 107.080(3). The Court is aware of no precedent requiring the lender to send an additional election-of-mediation form for a subsequent notice of sale that does not include a subsequent notice of default, nor has Riger identified such precedent.

Doc. # 44 at 7. Riger argues that certification of this question to the Nevada Supreme Court would clarify the legal effect of Riger's moving onto the property after the NOD in this case: Moreover, Riger states that "this issue is of extreme importance and will have significance to many individuals beyond the parties to this lawsuit," and certification of the question would "substantially aid this court in its determination of the issues raised not only by the parties in this action, but also in other cases pending before the District Court." Doc. # 45 at 14.

■■■ A district court should not certify a question when the statutory language is clear, and for any ambiguities, district courts are encouraged to predict how the Nevada Supreme Court would interpret the statutory language. *Bank of the W. v. Great Falls Ltd. P'ship,* No. 2:09–cv–0388, 2012 WL 2415519, at *1 (D.Nev. June 26, 2012). NRS § 107.086(1) states that "the exercise of the power of sale pursuant to NRS 107.080 with respect to any trust

agreement which concerns *owner-occupied housing* is subject to the provisions of this section."[3] NRS § 107.086(3) provides that "not later than 30 days after service" of notice, the grantor must complete a mediation form and serve notice upon the party being foreclosed upon. Foreclosure Mediation Rule 7.1, as written when the NOD was recorded, provides that eligibility for the Foreclosure Mediation Program:

> applies to any grantor or person (homeowner) who holds the title of record and is the owner-occupant of a residence as to which a notice of default and election to sell has been recorded on or after July 1, 2009. For purposes of these rules, an owner-occupant includes the trustee of a revocable or irrevocable trust if the trustor or a beneficiary of that trust resides in the residence at the time of the recordation of the notice of default and election to sell.

Doc. # 40, Ex. 22 at 6. After reviewing the submissions of the parties, the Court finds that the most credible interpretation of the language of the applicable statutes and rules is that the foreclosing party has an obligation to send an election-of-mediation form within thirty days of the NOD. As such, U.S. Bank fulfilled this obligation and was not required to send an additional mediation form upon learning that Riger moved into the property after the NOD. As such, Riger cannot establish that U.S. Bank did not substantially comply with the provisions of NRS § 107.080(5).

■■■ That Nevada precedent does not state an obligation to send a new election-of-mediation form if the property becomes owner-occupied after the owner receives a NOD does not indicate that this is an unsettled question of state law. Rather, the absence of this requirement indicates

---

**3.** Owner-occupied housing is defined as "housing that is occupied by an owner as the owner's primary residence." NRS § 107.086(15)(e).

that, based on the clear language of the statute as currently written, the foreclosing party fulfills its obligations under the statute once it sends an election-of-mediation form within thirty days of the NOD. Because Riger raised this motion for the first time after losing on the issue, she "must show 'particularly compelling reasons' for certifying the question." *McGhan*, 572 F.Supp.2d at 1225. For the reasons discussed above, the Court finds that Riger has failed to meet this burden, and denies her Motion to Certify.

## III. Conclusion

IT IS THEREFORE ORDERED that Riger's Motion for Reconsideration (Doc. # 45) is DENIED.

IT IS FURTHER ORDERED that Riger's Motion to Certify Question of Law to the Nevada Supreme Court (Doc. # 45) is DENIED.

IT IS SO ORDERED.