KARL HOLT AND FRANCES HOLT, APPELLANTS, v. REGIONAL TRUSTEE SERVICES CORPORATION, A FOREIGN ENTITY; ONE WEST BANK, FSB, A FOREIGN ENTITY; AND VERISE CAMPBELL, IN HER OFFICIAL CAPACITY AS DEPUTY DIRECTOR, NEVADA FORECLOSURE MEDIATION PROGRAM, RESPONDENTS.

No. 56479

December 15, 2011                           266 P.3d 602

*Law Offices of Roderic A. Carucci* and *Roderic A. Carucci*, Reno, for Appellants.

*Wright, Finlay & Zak, LLP*, and *Donna M. Osborn* and *Robin Prema Wright*, Las Vegas, for Respondents Regional Trustee Services Corporation and One West Bank, FSB.

*Fennemore Craig, P.C.*, and *Christopher H. Byrd*, Las Vegas, for Respondent Verise Campbell.

Before the Court EN BANC.

## OPINION

By the Court, PICKERING, J.:

Since 2009 Nevada law has required loan-modification mediation on homeowner request before a nonjudicial foreclosure sale can proceed on an owner-occupied residence. Compliance is evidenced by a Foreclosure Mediation Program (FMP) certificate that mediation has concluded or been waived. This certificate must be recorded for a valid foreclosure sale to occur.

On this appeal, we consider whether a lender who has been denied an FMP certificate for failing to mediate in good faith can reinitiate foreclosure by means of a new notice of default and election to sell and rescission of the original, thereby restarting the FMP process. In the circumstances of this case, we conclude that it can. We therefore affirm the district court's refusal to enjoin the nonjudicial foreclosure initiated by the second notice of default and election to sell and its further order directing the parties to return to FMP mediation.

### I.

Appellants Karl and Frances Holt signed a $2,350,000 note secured by a first deed of trust on their home. Respondents Regional Trustee Services Corporation (RTSC) and One West Bank, FSB are the trustee and beneficiary, respectively, of the deed of trust.[1] The Holts have not made a house payment since September of 2008; as of July, 2010, their arrearages stood at more than $360,000.

RTSC initiated nonjudicial foreclosure on July 16, 2009, by recording a notice of default and election to sell (the 2009 NOD). The Holts elected mediation under the then-new FMP. When no

---

[1] We base this statement on the representations made to the district court. The Holts dispute One West's beneficiary status but did not develop the issue in either of the two district court proceedings in this matter. This issue may be fleshed out when mediation occurs.

one from the lender's side appeared at the scheduled mediation, the mediator declared RTSC in bad faith. The Holts then filed a petition for judicial review in district court pursuant to NRS 107.086(5) to redress RTSC's bad faith non-participation in the FMP process. The petition named only RTSC as respondent and sought loan modification as sanctions, specifically, reduced principal (from $2,345,000 to $1,300,000), lower interest (from 6.5% to 2%), and a change in terms (from "interest only" to fully amortized over 30 years).

The matter was assigned to Judge Donald M. Mosley, who ordered a rescheduled mediation at RTSC's expense. Once again, no one from the lender's side appeared, and the Holts returned to district court, where they renewed their request for sanctions. After hearing argument but without taking evidence, Judge Mosley declined the Holts' request for court-ordered loan modification. He also rejected RTSC's excuses (miscommunication and an incompetent agent) for missing the rescheduled mediation and declared RTSC in bad faith. As sanctions, he directed that RTSC be denied the FMP certificate needed to conduct a valid foreclosure sale and awarded the Holts their attorney fees.

Orally, Judge Mosley limited his order to the foreclosure sale initiated by the 2009 NOD. He emphasized that denying the FMP certificate "doesn't mean that [RTSC] can't go through the process again of trying to foreclose." The Holts' counsel acknowledged the point ("I understand that you're not allowing an issuance of the certification, so the foreclosure cannot proceed unless they start over again"), and the hearing ended with this recap:

> COUNSEL FOR THE HOLTS: So as I understand it . . . , this matter is concluded . . . . Sanctions were ordered for $3144.20 [in attorney fees]. There will be no certificate issued by the Mediation Administrator; therefore, they can't proceed with foreclosure?
>
> THE COURT: On this one. They can restart the process.
>
> COUNSEL FOR THE HOLTS: They can start all over again.

Terse "findings of fact, conclusions of law and order" followed. These do not mention the oral limitation Judge Mosley put on his order, stating only: (1) "the Respondent, Regional Trustee Services, Corp. was in bad faith in that they failed to attend the [rescheduled] mediation"; (2) the Holts "are to be reimbursed for costs and expenses in the amount of $3,144.20"; and (3) "Letter of Certification shall not issue." Neither side appealed.

Meanwhile, the Holts continued to live in their house without making payments, and on March 1, 2010, RTSC reinitiated non-judicial foreclosure by recording a second notice of default and election to sell (the 2010 NOD). The 2010 NOD encompassed the

monthly payment defaults declared in the 2009 NOD (September 2008 to July 2009) and added those that had occurred since (from July 2009 forward). RTSC also recorded a notice of rescission of the 2009 NOD that stated, "this rescission shall not in any manner be construed as waiving or affecting any breach or default—past, present or future—under said Deed of Trust, . . . but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said [2009] Notice of Default . . . ."

The Holts responded to the 2010 NOD by filing a second action in district court, seeking to enjoin RTSC and One West from pursuing foreclosure under it. They argued that the order denying the FMP certificate carries claim- and issue-preclusive effect and permanently prevents foreclosure, even though they continue to default on their monthly house payments. In addition, the Holts elected FMP mediation as to the 2010 NOD "out of an abundance of caution," to protect their rights should their first line of defense—claim and issue preclusion—fail.

This second suit, which gives rise to this appeal, was assigned to Judge Michelle Leavitt. After briefing and argument, she denied the Holts' application for injunctive relief and ordered FMP mediation to take place within 90 days before the originally assigned mediator. The Holts appealed. Mediation has been stayed pending briefing, argument, and decision of the matter. While three loan modification mediations have been scheduled, therefore, none has actually occurred.

## II.

Denial of an FMP certificate does not, without more, permanently preclude foreclosure. The judicial review proceeding before Judge Mosley halted the foreclosure sale noticed by the 2009 NOD, but it did not preclude RTSC and One West from restarting the nonjudicial foreclosure process via the 2010 NOD. The Holts' contrary argument misapprehends the claim- and issue-preclusion doctrines, as well as the nature of nonjudicial foreclosure and FMP-mediation and judicial-review proceedings. Additionally, claim and issue preclusion cannot enlarge an order that the rendering judge expressly limited. Given the limitations Judge Mosley placed on his sanction order, to the extent the order carries preclusive effect, it inhibits the Holts' challenge to the 2010 NOD, not the 2010 NOD itself. Because Judge Leavitt neither committed an error of law nor abused her discretion in denying the Holts' application for injunctive relief, *see University Sys. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004), we affirm.

## A.

Claim and issue preclusion " 'protect the finality of decisions and prevent the proliferation of litigation,' but do not apply unless specific requirements are met." *Redrock Valley Ranch v. Washoe County*, 127 Nev. 451, 458, 254 P.3d 641, 646 (2011) (quoting *Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003)). "Among other requirements, for [claim] preclusion to attach . . . 'the subsequent action [must be] based·on the same claims or any part of them that were or could have been brought in the first case.' " *Id.* (third alteration in original) (quoting *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054-55, 194 P.3d 709, 713 (2008)). For "issue preclusion to attach, the issue decided in the prior [proceeding] must be identical to the issue presented in the current [proceeding]," *id.* (alterations in original) (quotation omitted), and have been " 'actually litigated and determined by a valid and final judgment [in which] the determination [was] essential to the judgment.' " *In re Sandoval*, 126 Nev. 136, 140, 232 P.3d 422, 424 (2010) (quoting Restatement (Second) of Judgments § 27 (1982)). Claim and issue preclusion can apply in the administrative context "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *United States v. Utah Constr. Co.*, 384 U.S. 394, 421-22 (1966),[2] and to defenses and compulsory counterclaims, but "only to defenses which were *available* in the prior action" (claim preclusion), 18 James Wm. Moore, *Moore's Federal Practice* § 131.21[5][a], at 131-53–131-54 (3d ed. 2011), and actually asserted and necessarily decided (issue preclusion), *id.* § 131.21[5][b], at 131-55.

The Holts argue that the judicial review proceedings before Judge Mosley extinguished RTSC's and One West's "claim" to a nonjudicial foreclosure remedy for the Holts' defaults on the note. But as the name implies, *nonjudicial* foreclosure is not a judicial "action," giving rise to a claim or defense of foreclosure based on a mediation election and the subsequent institution of FMP judicial review proceedings. *See* NRS 40.430(6)(e). It "occurs outside of

---

[2]The Holts stop short of arguing that the statutorily mandated mediation amounts to an administrative adjudication, with claim- and issue-preclusive effect of its own. *See Guzman v. Laguna Development Corp.*, 219 P.3d 12, 16 (N.M. Ct. App. 2009) (the purpose of mediation "is not to adjudicate or issue findings [but] instead . . . to define, evaluate, make recommendations on issues, and try to settle issues"; this fact, combined with "the inherently informal nature of mediation proceedings itself argues against applying res judicata to the end product of the process").

the 'range of procedures incident to litigation,' and instead involves act[s] unrelated to court authority." *Tom v. GMAC Mortgage, LLC*, No. 10-00653 SOM/BMK, 2011 WL 2133705, at *10 (D. Haw. May 25, 2011) (quoting *Young v. Allstate Ins. Co.*, 198 P.3d 666, 675 (Haw. 2008)). RTSC's and One West's nonjudicial foreclosure option—subject to the FMP requirements—was neither a defense to, or obligatory counterclaim in, the judicial review proceedings the Holts brought as to RTSC's bad faith.

Ordinarily, a lender pursuing nonjudicial foreclosure has the option under the loan documents "whether to declare a default, whether and when to accelerate, and whether, having chosen to take advantage of any of its [nonjudicial] remedies, to rescind the process before its completion." *Trident Center v. Connecticut General Life Ins.*, 847 F.2d 564, 567 (9th Cir. 1988). A notice of rescission renders moot disputes concerning the notice of default or its timing. *Coley v. Accredited Home Lenders, Inc.*, No. 4:10CV01870 JLH, 2011 WL 1193072, at *4 (E.D. Ark. Mar. 29, 2011) ("Whether the Notice of Default was valid is moot because the nonjudicial foreclosure sale described in the notice was cancelled. Thus, [the party exercising the power to sell] would be required by law to file a new Notice of Default and Intention to Sell before a sale could take place."); *Sakugawa v. Mortgage Electronic Registration Systems, Inc.*, No. 10-00028 JMS/BMK, 2011 WL 776051, at *6 (D. Haw. Feb. 25, 2011) ("the Notice of Rescission moots Plaintiff's claims for equitable relief—there is no existing controversy regarding the Notice of Foreclosure because it was rescinded. . . . Although nothing prevents anyone from seeking foreclosure on the subject property again . . . , any defects in that subsequent action would give rise to a separate claim from what is alleged in the Complaint, which is based on this particular Notice of Foreclosure."); *Tabb v. One West Bank, FSB*, No. 3:10-CV-855-ST, 2011 WL 4448752, at *8 (D. Or. Aug. 26, 2011) (quoting *Coley* and *Sakugawa* with approval). Rescission and renotice are not, as the Holts declaim, without lender consequence. Taking this path resets the right-to-cure and other time periods provided by law for the debtor's protection, *causing delay and additional losses, to the extent the property is financially under water, at the lender's expense. See* NRS 107.080(2)(b), (3).

NRS 107.086 adds mediation and procurement of an FMP mediation certificate to the statutory prerequisites for a valid nonjudicial foreclosure sale under NRS 107.080, when owner-occupied residential property is involved. *See* NRS 107.086(2)(c) (a "trustee shall not exercise a power of sale . . . unless the trustee . . . [c]auses to be recorded [an FMP certificate stating either] that no

mediation is required [or that] mediation has been completed in the matter''). If the homeowner elects mediation, the beneficiary of the deed of trust must participate in mediation in good faith and produce the documents and information specified in NRS 107.086(4) and (5) and FMR 11 to earn a certificate permitting foreclosure sale.[3] *See Pasillas v. HSBC Bank USA*, 127 Nev. 462, 465-66, 255 P.3d 1281, 1286-87 (2011). The petition for judicial review affords a way to challenge compliance with the statutory attendance, production, and good faith requirements. FMR 21. But the proceeding is expedited, FMR 21(2), does not require personal service, FMR 21(3), and exists ''for the limited purposes of determining bad faith, enforcing agreements made between the parties within the Program, including temporary agreements, and determining appropriate sanctions pursuant to NRS Chapter 107 as amended.'' FMR 21(1). When ''an initial action [is] circumscribed by . . . limitations [that] go to the very nature of the first action,'' ''ordinary claim-preclusion rules'' do not apply. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4412, at 305 (2d ed. 2002).

Nothing in the FMP statutes or rules suggests that denial of an FMP certificate permanently costs a lender the security afforded by the deed of trust. As *Pasillas* establishes, 127 Nev. at 465-66, 255 P.3d at 1286-87, denial of an FMP certificate follows automatically from a finding the statutory FMP requirements have been shirked, *see also Leyva v. National Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278-79 (2011) (such requirements are strictly construed). It is the bare minimum sanction; a district court abuses its discretion if it does *not* order the FMP certificate withheld for noncompliance with the FMP requirements. *Pasillas*, 127 Nev. at 480, 255 P.3d at 1286-87. The goal of foreclosure mediation is to produce an agreed-upon loan modification. To credit the Holts' argument that any omission that leads to denial of an FMP certificate should cost the lender its security and give the homeowner the property free and clear would convert the mediation from a cooperative endeavor to an antagonistic one and shift the focus from finding consensus to finding fault. If this is the purpose of the FMP, the Legislature needs to say so directly.[4] While sanctions conceivably could be imposed that

---

[3]The Foreclosure Mediation Rules became effective on June 30, 2009, and have been amended and renumbered since. The amendments do not change the substance of our analysis; for clarity, the citations in the text are to the current Foreclosure Mediation Rules.

[4]The FMR were amended during the pendency of this appeal to limit the potential abuse of the notice of rescission/new notice of default option, by suspending the lender's right to pursue it after the homeowner has elected FMP mediation but before the mediation has occurred, unless the homeowner consents. FMR 8(3). Notably, the suspension is temporary—pending mediation—not permanent.

would wipe out the lender's security—we do not decide this issue since it is not presented—it would be up to the petitioner to allege and establish the propriety of such drastic sanctions and the reviewing court to impose them explicitly. But the Holts, the petitioners here, did not request, nor did Judge Mosley order, forfeiture of the security provided by the deed of trust as a sanction in this case.

Because we do not equate denial of an FMP certificate with loss of the right to exercise a power of sale under a new notice of default, the Holts' claim- and issue-preclusion arguments fail. RTSC's and One West's[5] nonjudicial foreclosure rights were neither defenses to the Holts' claims, nor the subject of compulsory counterclaims "that were or could have been brought" in the judicial review proceedings before Judge Mosley. *Five Star Capital*, 124 Nev. at 1054-55, 194 P.3d at 713; *see* 18 *Moore's Federal Practice, supra,* § 131.24[5][a], at 131-79 ("Th[e] 'use or lose' approach [of claim preclusion doctrine] may be unworkable in instances in which the court hearing the initial action does not have jurisdiction to hear certain claims or to award certain types of relief, or the nature of the claims and relief sought is limited by statute." (citing Restatement (Second) of Judgments § 26(c) & cmt. c (1982))); *see also G.C. Wallace, Inc. v. Dist. Ct.,* 127 Nev. 701, 707, 262 P.3d 1135, 1139 (2011) (landlord who prevailed in summary eviction proceeding in justice court was not precluded from suing separately for unpaid rent; it was " 'the sense of the [statutory] scheme that the plaintiff should be permitted to split his claim' " (quoting Restatement (Second) of Judgments § 26(1)(d) (1982))). And as for issue preclusion, the only issue "actually litigated and determined" in the judicial review proceeding was that RTSC acted in bad faith and would be penalized by having to pay the Holts' attorney fees and being denied an FMP certificate. As the right to foreclose based on the Holts' continuing defaults was not at issue, issue preclusion does not apply. *In re Sandoval,* 126 Nev. at 140, 232 P.3d at 424.

B.

An additional basis exists for upholding Judge Leavitt's refusal to enjoin RTSC and One West from pursuing foreclosure under the

---

[5]Claim and issue preclusion generally require identity of parties. *Five Star Capital,* 124 Nev. at 1054-55, 194 P.3d at 713. Because we reject the Holts' claim- and issue-preclusion arguments on other bases, we do not address the Holts' failure to join One West as an additional respondent with RTSC in the judicial review proceeding and whether this would defeat preclusion against One West.

2010 NOD: "[T]he general rule of claim preclusion does not apply if the court in the first action expressly reserves the right to maintain a second action" or defense, 18 *Federal Practice and Procedure, supra,* § 4413, at 314 (citing Restatement (Second) of Judgments § 26(1)(b)); "[t]he same rule should hold for issue preclusion." *Id.* § 4424.1, at 642; *see Central States, SE and SW Areas Pen. v. Hunt Truck,* 296 F.3d 624, 629 (7th Cir. 2002). In declaring RTSC in bad faith, awarding fees, and directing that the certificate not issue, Judge Mosley expressly stated that RTSC could restart the foreclosure process. The Holts ignore this statement (and their counsel's acknowledgment of it), perhaps assuming it is irrelevant since it was oral and did not make it into the written findings of fact and conclusions of law. But a court may consult the record and proceedings giving rise to another court's order, at least when the latter is ambiguous. *First Union Nat. Bank v. Pictet Overseas Trust,* 477 F.3d 616, 620 (8th Cir. 2007) (citing *Oklahoma v. Texas,* 256 U.S. 70, 88 (1921)); *see City of Lakewood v. Pierce County,* 30 P.3d 446, 450-51 (Wash. 2001) (oral pronouncements that were consistent with a judgment may be considered in construing it). As we have discussed, nothing in the written order directing denial of an FMP certificate requires the sweeping preclusion for which the Holts contend; the written order's silence on the point at the very least renders it ambiguous. This made it appropriate for Judge Leavitt to look to Judge Mosley's oral statements in interpreting the scope of his sanction order.

Because sanction proceedings tend to be summary, courts proceed cautiously in attributing preclusive effect to them. *See Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1197 (3d Cir. 1993); *Cohen v. Lupo,* 927 F.2d 363, 365 (8th Cir. 1991); *but see Reilly v. Natwest Markets Group, Inc.,* 178 F. Supp. 2d 420, 425-26 (S.D.N.Y. 2001) (applying claim preclusion to bar subsequent litigation requesting expanded sanctions for conduct for which lesser Fed. R. Civ. P. 37 sanctions had been awarded in prior litigation). To the extent the judicial review proceedings before Judge Mosley may command preclusive effect, the limits he placed on his order defeat the Holts' position on this appeal. Claim- and issue-preclusion doctrines are not concerned with whether the decision in the prior proceeding was right or wrong.[6] If the Holts were aggrieved by Judge Mosley's failure to impose

---

[6]The Holts' failure to appeal the order entered by Judge Mosley also makes procedurally improper their criticism of the Eighth Judicial District Court's assignment of all FMP judicial review proceedings to a single district court judge. *See also* EDCR 1.30(b)(5) (requiring the chief judge to "[m]ake regular and special assignments of all judges").

harsher sanctions than he did, the remedy was to appeal his order, not to seek to enlarge it by bringing a second proceeding before a different district court judge. *See Hudson v. Hedge,* 27 F.3d 274, 276 (7th Cir. 1994) (plaintiff "cannot use a new suit to contend that the disposition of the first was mistaken").

## C.

The Holts' final argument contests Judge Leavitt's order directing that FMP mediation occur. Given that the Holts specifically requested mediation as to the 2010 NOD, albeit "out of an abundance of caution," we find no error in this order. We therefore dissolve the stay and affirm.

SAITTA, C.J., and DOUGLAS, CHERRY, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.