An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| KEITH D. HINES AND DEENA HINES F/K/A DEENA R. BAKER, Appellants, vs. NATIONAL DEFAULT SERVICING CORPORATION, AN ARIZONA CORPORATION; AND WELLS FARGO BANK, N.A., Respondents. | No. 62128 **FILED** JUL 3 1 2015 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ DEPUTY CLERK |

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order granting summary judgment in a wrongful foreclosure action. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

Appellants Keith and Deena Hines had a loan with respondent Wells Fargo Bank, N.A., that was secured by a deed of trust on their house. After the Hineses missed loan payments in 2006 and 2007, Wells Fargo's agent, respondent National Default Servicing Corporation (NDSC), recorded a notice of default against the Hineses (the 2007 Notice of Default). The Hineses and Wells Fargo then entered into an agreement to modify the Hineses' loan.

In 2009, the Hineses began missing payments, making partial payments, and making late payments on their modified loan. In December 2009, NDSC recorded a second notice of default against the Hineses (the 2009 Notice of Default). In January 2010, NDSC recorded a notice of rescission. The notice of rescission did not identify which notice of default it was rescinding.

15-23176

On an unspecified date in 2010, the Hineses' attorney purportedly called Wells Fargo or NDSC and expressed a desire to mediate the foreclosure. In February 2010, NDSC submitted an affidavit to the Foreclosure Mediation Program (FMP) administrator stating that the Hineses had failed to return the form upon which they were to elect or waive participation in the FMP. An FMP certificate authorizing a foreclosure sale was issued. NDSC then recorded a notice of a trustee's sale, and the Hineses' house was sold at a trustee's sale.

The Hineses filed a complaint against NDSC and Wells Fargo alleging multiple claims, including wrongful foreclosure and fraud claims. Wells Fargo filed a motion to compel the production of documents, which the Hineses did not oppose. The district court then granted Wells Fargo's motion to compel.

The district court subsequently granted summary judgment to Wells Fargo and NDSC. It also ordered the Hineses to pay $1,500 to Wells Fargo for its expenses relating to the motion to compel because the district court found that the Hineses had failed to respond to the motion to compel or to produce the requested discovery after the motion to compel was granted. After the district court issued its order, the Hineses filed a motion to reconsider, which the district court denied.

The Hineses now appeal and raise the following issues: (1) whether the district court erred by granting summary judgment against the Hineses on their wrongful foreclosure claim, (2) whether the district court erred by granting summary judgment against the Hineses on their fraud claim, and (3) whether the district court abused its discretion by

ordering the Hineses to pay Wells Fargo's expenses relating to the motion to compel.[1]

*Standard of review*

We review de novo a district court order granting summary judgment, *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), and will affirm a district court order reaching a correct result for the wrong reason. *See Holcomb v. Ga. Pac., LLC*, 128 Nev., Adv. Op. 56, 289 P.3d 188, 200 (2012).

We review a district court's discovery rulings, including an order imposing a discovery sanction, for an abuse of discretion. *Club Vista Fin. Servs., L.L.C. v. Eighth Judicial Dist. Court*, 128 Nev., Adv. Op. 21, 276 P.3d 246, 249 (2012) (reviewing discovery decisions for an abuse of discretion); *Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010) (reviewing the imposition of discovery sanctions for an abuse of discretion).

---

[1]NDSC argues that this court lacks jurisdiction to consider the Hineses' appeal because the Hineses did not timely file their notice of appeal after the district court entered its order granting summary judgment. Here, the Hineses' post-judgment motion to reconsider sought for the district court to alter or amend its judgment. Therefore, it was a motion made pursuant to NRCP 59(e), which tolled the deadline by which to file the notice of appeal. *See* NRAP 4(a)(4); *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 585, 245 P.3d 1190, 1195 (2010). As a result, the Hineses' notice of appeal was timely. *See* NRAP 4(a)(4). Thus, NDSC's jurisdiction argument is without merit.

*The district court did not err by granting summary judgment against the Hineses on their wrongful foreclosure claim*

The Hineses argue that the district court erred by granting summary judgment against them on their wrongful foreclosure claim because there was a genuine issue of material fact as to whether the notice of rescission rescinded the 2009 Notice of Default. As part of this argument, they contend that the rule providing that an ambiguous contract be interpreted against its drafter applies to the notice of rescission.

Wells Fargo and NDSC argue that because the notice of recession's deficiencies make its meaning unascertainable, the notice of recession is without effect and does not rescind the 2009 Notice of Default. Alternatively, they contend that if the notice of rescission is to be given effect, extrinsic evidence should be relied upon to conclude that the notice of rescission only applies to the 2007 Notice of Default.

The Hineses' wrongful foreclosure claim may either be alleging a tort of wrongful foreclosure or a violation of NRS Chapter 107. Since we evaluate a claim by "look[ing] at the substance of the claim[ ], not just the label[ ] used in the . . . complaint," *Nev. Power Co. v. Eighth Judicial Dist. Court*, 120 Nev. 948, 960, 102 P.3d 578, 586 (2004), we address both versions of the claim here.

*The district court did not err by granting summary judgment with respect to the tort claim for wrongful foreclosure*

To prevail on a wrongful foreclosure tort claim, a plaintiff must prove that the foreclosing party did not have a legal right to foreclose on the property. *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304, 662 P.2d 610, 623 (1983). "Therefore, the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the

SUPREME COURT
OF
NEVADA

(O) 1947A

4

power of sale was exercised." *Id.* If the plaintiff does not or cannot demonstrate that it was not in default, then it cannot prevail on a tort claim for wrongful foreclosure. *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 785 (9th Cir. 2014).

Here, the Hineses fail to establish that they were not in default. Instead, the evidence in the record shows the opposite: the Hineses were in default because they missed multiple payments that were not subsequently made. Thus, the district court correctly granted summary judgment to the extent that the Hineses' claim was for the tort of wrongful foreclosure.

*The district court did not err in granting summary judgment with respect to the claim of a violation of NRS Chapter 107*

When the grantor of a deed of trust defaults on the underlying loan, the deed of trust beneficiary may pursue a nonjudicial foreclosure if NRS Chapter 107's requirements are satisfied. *Edelstein v. Bank of N.Y. Mellon*, 128 Nev., Adv. Op. 48, 286 P.3d 249, 254-55 (2012). Of NRS Chapter 107's requirements, those set out in NRS 107.080 (2010) and NRS 107.086 (2009)—statutes which were in force at the time of the foreclosure and sale of the Hineses' house—are relevant to our analysis.[2]

NRS 107.080 (2010) requires the trustee to provide two notices before selling a property. First, the trustee must "execute[ ] and cause[ ] to be recorded . . . a notice of the breach and of the election to sell." NRS 107.080(2)(c) (2010). Second, the trustee must, no earlier than three

_____

[2]Although the Hineses alleged a violation of NRS 107.087 in their complaint, they waived this issue by not addressing it in their appellate briefs. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) ("Issues not raised in an appellant's opening brief are deemed waived.").

months after recording the notice of default, have a notice of sale recorded. NRS 107.080(4) (2010). If a trustee fails to substantially comply with NRS 107.080's requirements, then the nonjudicial foreclosure sale may be voided. NRS 107.080(5) (2010); *Edelstein*, 128 Nev., Adv. Op. 48, 286 P.3d at 255.

NRS 107.086(2)(a)(3) (2009) requires a trustee seeking to complete a nonjudicial foreclosure of an owner-occupied residence to provide the homeowner with a form upon which to elect or decline to participate in FMP mediation. If the homeowner waives mediation or fails to return the form, then the trustee is entitled to obtain an FMP certificate stating that no mediation is required. NRS 107.086(3).

After initiating a nonjudicial foreclosure proceeding, a trustee may "'rescind the process before its completion.'" *Holt v. Reg'l Tr. Servs. Corp.*, 127 Nev., Adv. Op. 80, 266 P.3d 602, 606 (2011) (quoting *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 567 (9th Cir. 1988)). Thus, a notice of rescission invalidates a notice of default and "renders moot disputes concerning the notice of default or its timing." *Id.* As a result, a trustee who files a notice of rescission that operates against a notice of default must record a new notice of default in order to complete a nonjudicial foreclosure. *See Coley v. Accredited Home Lenders, Inc.*, No. 4:10CV01870 JLH, 2011 WL 1193072, at *4 (E.D. Ark. Mar. 29, 2011).

> *The notice of rescission should not be interpreted as if it were a contract*

The district court applied contract principles when interpreting the notice of rescission. Therefore, we first address whether the notice of rescission should be interpreted as if it were a contract.

"Generally, the purpose of recording statutes is to provide subsequent purchasers with knowledge concerning the state of title for real property." *State Dep't of Taxation v. Kawahara*, 131 Nev., Adv. Op. 42, ___ P.3d ___ (June 25, 2015). Thus, a recorded document serves to advise all persons of the contents of the document. *See 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1152 (D. Nev. 2013); *see also In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 413 (6th Cir. 1997) ("The purpose of the recording statutes at issue here is to allow third parties to deal with immovable property without searching beyond the public records."). The recording of a document constructively "impart[s] notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice." NRS 111.320. However, it does not impart constructive notice of information not presented in the document. *See Kawahara*, 131 Nev., Adv. Op. 42, ___ P.3d at ___ (holding that the recording of a tax lien does not establish constructive notice of a mortgage lien even if the recording party desired to record a mortgage lien). Thus, a recorded document serves to inform others about the information contained in the document and makes third parties legally responsible for knowledge of its contents.

By contrast, "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach." *Minster Farmers Coop. Exch. Co. v. Meyer*, 884 N.E.2d 1056, 1061 (Ohio 2008) (internal quotations omitted). Thus, it governs a relationship between parties and generally does not apply to uninvolved third parties. Because the notice of rescission is a recorded notice which can apply to uninvolved third parties

and does not memorialize an exchange of promises, contract principles are inapplicable to its interpretation.[3]

*A recorded notice is to be interpreted on its face in conjunction with other recorded documents to which it refers*

Since a recorded notice is a legal document, its interpretation is an issue of law.[4] *See, e.g., Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 414 (2d Cir. 2010) (holding that the "[i]nterpretation of a legal document is [an issue] of law"); *Sanders v. Dias*, 947 A.2d 1026, 1031 (Conn. App. Ct. 2008) ("Intent as expressed in deeds and *other recorded documents* is a matter of law." (emphasis added) (internal quotations omitted)); *Red Hill Outing Club v. Hammond*, 722 A.2d 501, 504 (N.H. 1998) (holding that "[t]he construction of [a] deed[ ] is an issue of law").

Although our caselaw has not addressed how to interpret a notice of default or a notice of rescission, federal cases interpreting tax liens provide meaningful guidance. A federal tax lien arises when the Internal Revenue Service assesses a lien "upon all property and rights to property, whether real or personal," of a person or entity who failed to pay a tax demand. 26 U.S.C. § 6321 (2012). "The primary power of a tax lien . . . lies not in its effect against the taxpayer, but in its priority vis-à-vis other lienholders and subsequent purchasers." *In re Crystal Cascades Civil, LLC*, 398 B.R. 23, 28 (Bankr. D. Nev. 2008), *aff'd*, 415 B.R. 403, 415

---

[3]Therefore, we necessarily reject the dissent's apparent reliance on the contract law principle of interpreting ambiguous contracts against the drafter because it is inapplicable to the present case.

[4]We decline to adopt the dissent's novel and unsupported theory that the interpretation of the present recorded notice is an issue of fact.

(B.A.P. 9th Cir. 2009). Thus, a tax lien "is not valid until placed [in the] public record." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963). If a tax lien fails to adequately identify the person or entity against whom it is to operate, "[t]his defect is fatal [and] results in a failure to provide even constructive notice." *In re Focht*, 243 B.R. 263, 266-67 (W.D. Pa. 1999) (finding that the failure to identify an entity's co-owner on a tax lien prevented the lien from operating against the co-owner). If, however, an error or omission is minor and the true identity of the person or entity subject to the lien is readily discernable, then an Internal Revenue Service tax lien is valid. *See In re Spearing Tool & Mfg. Co.*, 412 F.3d 653, 656 (6th Cir. 2005) (holding that a tax lien's identification of "'Spearing Tool and Manufacturing'" as "'Spearing Tool & Mfg.'" did not prevent the lien from providing constructive notice).

Furthermore, federal courts have held that the notice that a tax lien provides can include the content of recorded documents whose connections to the tax lien are readily discoverable. *See Kivel v. United States*, 878 F.2d 301, 304-05 (9th Cir. 1989) (holding that a tax lien naming "Bobbie Morgan Lane" was effective against a property held by that person under the name "Bobbie M. Morgan" because the recorded documents connected to the title of the property and to the tax lien demonstrated that both names represented the same person). Thus, federal caselaw establishes two principles that guide our interpretation of the notice of rescission: (1) that a defect in a recorded notice that omits a material term can prevent the notice from having a legal effect, and (2) that a recorded notice may be interpreted by reference to other recorded documents to which it refers.

Here, the notice of rescission does not identify which notice of default it was to rescind. Therefore, it does not establish on its face that it rescinds the 2009 Notice of Default. Furthermore, the only recorded document to which the notice of rescission refers is the Hineses' deed of trust. Thus, the notice of rescission does not demonstrate by reference to other recorded documents that it rescinds the 2009 Notice of Default.

Therefore, the notice of rescission does not rescind the 2009 Notice of Default.[5] Because the record does not show that the 2009 Notice of Default had been rescinded, it does not suggest that NDSC or Wells Fargo violated NRS 107.080 by foreclosing on the Hineses' property without having a notice of default in force.

Furthermore, NDSC submitted a request for an FMP certificate in which it represented that the Hineses failed to submit the form on which they were to elect or waive mediation. The record is devoid of evidence suggesting that the Hineses returned the FMP enrollment form to NDSC, Wells Fargo, or the FMP administrator. Therefore, the undisputed material facts demonstrate that NDSC and Wells Fargo complied with the applicable NRS 107.086 requirements.[6] *See* NRS 107.086(2)-(3).

---

[5]Since it does not affect our holding, we do not address whether the notice of rescission made sufficient reference to recorded documents to demonstrate that it rescinded the 2007 Notice of Default.

[6]Although the dissent identifies a potentially meritorious policy concern about the potential for bad faith conduct when seeking an FMP certificate, we decline to adopt its suggestion that NRS 107.086(6)'s requirement for the beneficiary of a deed of trust to act in good faith *at mediation* be extended to apply to the request for an FMP certificate because NRS 107.086 does not impose such a requirement. *See* NRS 107.086(2)-(3); *see also S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 121

*continued on next page...*

Supreme Court
OF
Nevada

(O) 1947A

Here, the district court granted summary judgment to Wells Fargo and NDSC because it found that extrinsic evidence demonstrated that the notice of rescission applied to the 2007 Notice of Default and not the 2009 Notice of Default. Although the district court incorrectly applied contract principles in its analysis, it correctly found that the notice of rescission does not rescind the 2009 Notice of Default. Because the district court reached the correct result, albeit for the wrong reason, it did not err by granting summary judgment against the Hineses on their wrongful foreclosure claim. *See Holcomb v. Ga. Pac., LLC*, 128 Nev., Adv. Op. 56, 289 P.3d 188, 200 (2012).

*The district court did not err by granting summary judgment against the Hineses on their fraud or intentional misrepresentation claim*

The Hineses argue that there is a genuine issue of material fact as to whether Wells Fargo committed fraud when obtaining the FMP certificate by making a false statement about the Hineses' desire to mediate the foreclosure.

The first element of a fraud claim is that "the defendant made a false representation that the defendant knew or believed was false." *Franchise Tax Bd. of Cal. v. Hyatt*, 130 Nev., Adv. Op. 71, 335 P.3d 125,

---

*...continued*

Nev. 446, 451, 117 P.3d 171, 174 (2005) (stating that "it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done" (internal quotations omitted)). Therefore, whether NDSC and Wells Fargo acted in good faith when requesting the FMP certificate after the Hineses failed to return the form on which they were to elect or waive mediation is immaterial to this issue and does not provide a basis to reverse the grant of summary judgment. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005).

 

144 (2014). "With respect to the false representation element, the suppression or omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007) (internal quotations omitted).

Here, NDSC submitted a request for an FMP certificate in which it represented that the Hineses failed to return the FMP form on which they were to elect or waive mediation. The record includes no evidence suggesting that the Hineses did in fact return the FMP enrollment form to NDSC, Wells Fargo, or the FMP administrator. Therefore, the Hineses failed to proffer evidence to show that NDSC's request for an FMP certificate contained an express misrepresentation.

Instead of providing evidence to challenge the veracity of NDSC's request for an FMP certificate, the Hineses proffered evidence suggesting that their attorney orally told Wells Fargo that the Hineses desired to mediate. NDSC did not reveal this purported conversation in its request for an FMP certificate. However, the Hineses have not shown that this evidence of NDSC's purported omission creates a genuine issue of material fact for two reasons.

First, the Hineses proffered no evidence or analysis to suggest that NDSC or Wells Fargo had a duty to disclose this purported conversation when requesting the FMP certificate. The FMP rules state that a person whose house is subject to foreclosure "*shall . . . complete the [FMP] Enrollment Form* and deliver it . . . to the [FMP] Administrator." FMR 8(2)(a) (emphasis added). The person seeking mediation "*shall also mail a copy of the Enrollment of Mediation to the trustee.*" FMR 8(2)(b) (emphasis added). If the person does not complete and return the form to

the FMP administrator during this time period, the FMP "*shall . . . issu[e] a certificate stating no mediation is required,* and that a foreclosure sale may be noticed according to law." FMR 8(4) (emphasis added). Because these FMP rules use the word "shall," they impose mandatory duties. *See Pasillas v. HSBC Bank USA,* 127 Nev., Adv. Op. 39, 255 P.3d 1281, 1285 (2011). Thus, the FMP rules require the FMP to issue a certificate stating that mediation is not required if the homeowner fails to return the mediation enrollment form.

Furthermore, the Hineses have provided no authority or analysis to show that the FMP rules allow a person subject to foreclosure to fulfill the duty to return an FMP enrollment form by orally expressing a desire to mediate. *Cf.* FMR 8. Nor do they provide authority or analysis to show that a lender has a duty to inform the FMP when the borrower orally expresses an interest in mediation. Therefore, NDSC and Wells Fargo did not have a duty to inform the FMP about the Hineses' attorney's purported telephone call.

Second, the Hineses proffered no evidence or analysis to show that NDSC's refusal to mention the Hineses' attorney's purported oral statement made its representation that the Hineses failed to return the FMP enrollment form false or misleading. The existence or nonexistence of the Hineses' attorney's statement has no bearing on whether the Hineses completed or submitted the FMP enrollment form. Therefore, the Hineses failed to proffer evidence to show that NDSC's request for an FMP certificate made a misrepresentation. As a result, we conclude that the

district court did not err in granting summary judgment against the Hineses on their fraud claim.[7]

*The district court did not abuse its discretion by ordering the Hineses to pay Wells Fargo's expenses related to the motion to compel*

The Hineses argue that the district court abused its discretion in granting Wells Fargo's motion to compel because the Hineses substantially complied with Wells Fargo's discovery requests and the deficiencies in their responses were technical and not substantive. Alternatively, the Hineses argue that if the district court properly granted the motion to compel, an award of expenses to Wells Fargo was unwarranted because Wells Fargo failed to make a good faith effort to acquire the discovery from them before filing its motion to compel.

*The district court did not abuse its discretion in granting Wells Fargo's motion to compel*

If a party does not file and serve a timely opposition to a motion, this failure "may be construed as an admission that the motion is meritorious and a consent to granting it." *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 124 Nev. 272, 278, 182 P.3d 764, 768 (2008); *see also King v. Cartlidge*, 121 Nev. 926, 927, 124 P.3d 1161, 1162 (2005) (providing the same). Here, Wells Fargo filed a motion

---

[7]To the extent that the Hineses contend on appeal that their fraud claim is based on something other than the statements made in NDSC's request for an FMP certificate, they are arguing for a claim that they did not make in their complaint. Therefore, we decline to consider this new claim. *See Laird v. State Pub. Emps. Ret. Bd.*, 98 Nev. 42, 46, 639 P.2d 1171, 1173 (1982) (refusing to consider a claim made for the first time on appeal); *see also Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (failure to properly raise a non-jurisdictional issue before the district court waives the issue on appeal).

to compel written discovery, which the Hineses did not oppose. Whether the Hineses substantially complied with the discovery requests or made only technical errors in their discovery responses does not alter the fact that they failed to oppose the motion. Therefore, the district court acted within its discretion in granting Wells Fargo's uncontested motion to compel. *See Las Vegas Fetish & Fantasy Halloween Ball, Inc.*, 124 Nev. at 278, 182 P.3d at 768.

> *The district court did not abuse its discretion by ordering the Hineses to pay Wells Fargo's expenses relating to the motion to compel*

NRCP 37(a)(4)(A) provides that "[i]f the motion [to compel] is granted . . . , the court shall . . . require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion," unless an exception enumerated in the rule applies. In a court rule, the term "shall" is mandatory. *See State Emps. Ass'n, Inc. v. Daines*, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992) (holding that "in statutes, 'may' is permissive and 'shall' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature"); *see also Webb v. Clark Cnty. Sch. Dist.*, 125 Nev. 611, 618, 218 P.3d 1239, 1244 (2009) (stating that "the rules of statutory interpretation apply to Nevada's Rules of Civil Procedure"). Thus, NRCP 37(a)(4)(A) requires the district court to award expenses to a party who succeeds on its motion to compel discovery unless an exception applies.

Here, the district court granted Wells Fargo's motion to compel discovery. Therefore, NRCP 37(a)(4)(A) required the district court to order the Hineses to pay Wells Fargo's expenses associated with the motion to compel unless an exception applies.

On appeal, the Hineses contend that NRCP 37(a)(4)(A)'s exception for when the movant fails to make a good faith effort to obtain the discovery before filing the motion to compel precludes an award of expenses.[8] However, they waived this argument by not raising it before the district court.[9] *See Old Aztec Mine, Inc. v. Brown,* 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). Therefore, we conclude that the district court did not abuse its discretion in awarding Wells Fargo's expenses.

*Conclusion*

The district court did not err by granting summary judgment against the Hineses on their wrongful foreclosure claim because the Hineses failed to establish a genuine issue of material fact as to whether they were in default on their loan or whether the notice of rescission rescinds the 2009 Notice of Default. The district court did not err by granting summary judgment against the Hineses on their fraud claim because the Hineses failed to establish a genuine issue of material fact as to whether NDSC or Wells Fargo made a misrepresentation on the application for the FMP certificate. Finally, the district court did not

---

[8]The Hineses do not argue in their appellate briefing that NRCP 37(a)(4)(A)'s other exceptions apply. Therefore, they waive these issues on appeal. *See Powell v. Liberty Mut. Fire Ins. Co.,* 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011).

[9]If the Hineses' appellate arguments about the technical deficiencies and substantial compliance of their discovery responses are also intended to be arguments against liability for Wells Fargo's expenses under NRCP 37(a)(4)(A), the Hineses waived these arguments by not making them with regard to this issue before the district court. *See Old Aztec Mine,* 97 Nev. at 52, 623 P.2d at 983.

abuse its discretion in ordering the Hineses to pay Wells Fargo's expenses related to the motion to compel because the Hineses did not file and serve a written opposition to the motion or demonstrate that an exception to NRCP 37(a)(4)(A)'s imposition of liability for expenses applies.[10] Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Saitta

_____, J.
Gibbons

PICKERING, J., concurring in part and dissenting in part:

The district court granted summary judgment against borrowers Keith and Deena Hines on their chapter 107 claim. In my view, genuine issues of material fact precluded summary judgment on that claim. This lender, or its agent, recorded notices of default in 2007 and 2009 and a notice of rescission of notice of default in 2010. The 2010 notice of rescission did not specify whether it invalidated the 2007 notice of default, the 2009 notice of default, or both. Adding to the confusion, the lender and its agent spoke to the borrowers' attorney before recording the notice of rescission and were told that the borrowers expected the lender to restart foreclosure, whereupon the borrowers would elect mediation under

_____

[10]We have considered the parties' remaining arguments and conclude that they are without merit.

Nevada's foreclosure mediation program (FMP). Despite these events, the lender went ahead with foreclosure based on the 2009 notice of default and, to obtain the required certificate from the FMP administrator, represented that the borrowers had not requested mediation, not disclosing that the lender knew the borrowers expected a fresh notice of default and had declared their intention, on receipt of such notice, to demand mediation. Viewing these facts most favorably to the Hineses, as the summary judgment context requires, I cannot say, as a matter of law, that the lender: (1) substantially complied with NRS chapter 107, see NRS 107.080(5)(a); or (2) met the FMP's good faith requirement, see NRS 107.086(6). For these reasons, while I join the decision affirming the discovery sanctions imposed, I respectfully dissent from the majority's affirmance of the district court's summary judgment in favor of the lender.

The Hineses were represented by counsel during part of their foreclosure and from the filing of their complaint up until the district court denied the first motion for summary judgment. Their litigation counsel withdrew, however, before Wells Fargo and NDSC renewed their motion for summary judgment after the close of discovery. Nevertheless, in opposing the renewed motion, the Hineses presented sufficient evidence to show issues of fact prevented summary judgment on their chapter 107 claim. Their evidence showed that in December 2009 a Wells Fargo representative called and informed them that their foreclosure "was to be dismissed and procedures need to take place under [the] Hamp Bill." After the Hineses learned that Wells Fargo had not halted foreclosure, they contacted an attorney on January 20, 2010, who called Wells Fargo and NDSC "and informed them that this was not in compliance with Nevada Foreclosure Laws and needed[ ]to be cancelled and refil[ed] again

Supreme Court
of
Nevada

(O) 1947A

18

[and] advised that once refil[ed] we would request mediation." The Hineses' attorney told them to contact her once the new notice of default was filed and they could begin the request for mediation. The next day, January 21, NDSC recorded the notice of rescission.

But on February 1, 2010, NDSC altered course and proceeded with the foreclosure, signing and submitting an affidavit to the FMP seeking a foreclosure certificate on the grounds no mediation was required because the Hineses had failed to return the form to elect or waive mediation. In March 2010, Keith contacted Wells Fargo to inform it that he had been having serious medical problems that required extensive surgery and thus he could only make a half payment that month; the Wells Fargo representative he spoke to told him to send in the documentation demonstrating his medical hardships "and, as long as it's curable, as long as we know it's a curable issue, we're going to work with you." The Hineses then mailed in their partial $700 payment for that month. In April 2010 NDSC received its certificate from the FMP allowing it to proceed with the foreclosure sale, which occurred on August 3, 2010.

Summary judgment requires the reviewing court to consider the evidence and all inferences fairly derived therefrom in favor of the non-moving party. *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev., Adv. Op. 23, 277 P.3d 458, 462 (2012). Doing so here suggests that despite Wells Fargo's December 2009 statement that its foreclosure was "to be dismissed," the January 2010 communication between the Hineses' attorney and Wells Fargo and NDSC, and the subsequent immediate recording of the notice of rescission, NDSC still sought and obtained a mediation certificate based upon the Hineses failure to return a mediation

election form. These facts at minimum raise a question as to whether Wells Fargo and NDSC substantially complied with NRS 107.080 and NRS 107.086.[1]

The usual substantial compliance issue in this context is whether the foreclosing entity sufficiently noticed the foreclosure. *See, e.g., Schleining v. Cap One, Inc.*, 130 Nev., Adv. Op. 36, 326 P.3d 4, 8-9 (2014) (considering whether foreclosing entity substantially complied with the notice provisions concerning guarantors provided in NRS 107.095); *Banks v. Freddie Mac*, No. 2:11-CV-00648-GMN, 2014 WL 2741875, at *7 (D. Nev. June 17, 2014) (summary judgment denied where lender and servicer failed to show that they had substantially complied with the statutory foreclosure notice mandates to the grantor/borrower and thus had "failed to meet their initial burden"). Here, however, the unique issue presented is whether the foreclosing entity substantially complied with the statutory foreclosure procedure when it recorded a notice of rescission of notice of default and election to sell in the midst of its foreclosure, and thereafter claimed the notice of rescission undid an earlier, ostensibly superseded notice of default, not the notice of default about which the borrowers and their lawyer had corresponded with the lender.

The majority focuses on whether the notice of rescission can have any legal effect on the 2009 notice of default given that it does not specifically reference that notice of default, looking to tax lien cases for support. But those cases concern whether a flawed tax lien notice recorded against the property can be held to provide constructive notice of

---

[1]The Hineses did not file a cross-motion for summary judgment. Thus, the sole issue presented is whether the lender showed it was entitled to judgment as a matter of law.

the tax lien to a third-party (not the tax debtor) and thus allow the tax lien to have priority. *See* Majority at 7-8. So, a seriously flawed tax lien would be held against the entity that created and recorded it. The majority uses this principle here, however, to shield Wells Fargo and NDSC from the effect of the problematic notice of rescission that NDSC recorded, a document that they were not required to record but that, as the majority recognizes, has the effect of cancelling a given foreclosure.

The more relevant factual inquiry, then, would be what the notice of rescission would mean to a third party who viewed the document in the context of the entire foreclosure process. *See* NRS 247.190(1) ("A document acknowledged or proved and certified and recorded in the manner prescribed in this chapter from the time of depositing the document with the county recorder of the proper county for record, provides notice to all persons of the contents thereof, and all third parties shall be deemed to purchase and take with notice."); *see also* NRS 111.320 ("Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded . . . , must from the time of filing the same with the Secretary of State or recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice."); *State Dep't of Taxation v. Kawahara*, 131 Nev., Adv. Op. 42, ___ P.3d ___ (2015) ("Generally, the purpose of recording statutes is to provide subsequent purchasers with knowledge concerning the state of title for real property."). Though NDSC's notice of rescission appears to reference the 2007 notice of default by listing the same internal reference number, the recording date strongly suggests that it applies to the 2009 notice of default. Thus, a third-party reader looking at these recorded documents would not automatically

conclude that the notice of rescission applied only to the 2007 notice of default, or that the notice of rescission had no effect at all (because why would a trustee have such a notice recorded in the first place if not to have some effect on the recorded foreclosure documents). *See Holt v. Reg'l Tr. Servs. Corp.*, 127 Nev., Adv. Op. 80, 266 P.3d 602, 606 (2011) (the purpose of a notice of rescission is to render "moot disputes concerning the notice of default or its timing"). But these are the only two options the majority's holding leaves. And, in any event, resolution of this factual inquiry is not proper at summary judgment.

NDSC voluntarily caused the notice of rescission to be recorded in the middle of its foreclosure under the 2009 notice of default and this raises an issue about whether NDSC and Wells Fargo substantially complied with the foreclosure procedure outlined in NRS 107.080, specifically whether a third party would view the document as rescinding one, both, or none of the notices of default. This issue of fact is material, and prevents summary judgment in Wells Fargo and NDSC's favor, especially because the two argue only that the Hineses failed to cure their 2009 default, and a 2007 loan modification document indicates the Hineses may have cured their 2007 default. If this is the case, then Wells Fargo could not have foreclosed pursuant to the 2007 notice of default. *See* NRS 107.080(2)-(3) (trustee can exercise power of sale only if the grantor fails to make good the deficiency in performance of payment within a certain period of time of recording the notice of default).

Furthermore, issues of fact surround whether Wells Fargo and NDSC substantially complied with NRS 107.086's FMP-specific provisions. The foreclosure mediation process demands that the lenders and their agents attend mediation and act in good faith, and if they do not,

then the certificate of mediation may not issue and the lender must start the foreclosure process over. *See* NRS 107.086(6); *Holt*, 266 P.3d at 607 ("[D]enial of an FMP certificate follows automatically from a finding the statutory FMP requirements have been shirked."). The Legislature also instructed this court to establish "procedures *to protect the mediation process from abuse* and to ensure that each party to the mediation acts in good faith." NRS 107.086(11)(d) (emphasis added); *see also* FMR 22 (authorizing judicial review to determine, among other things, whether the trust deed beneficiary participated in the mediation in good faith). Given the factual issue as to Wells Fargo's December 2009 representations that it was to restart the foreclosure process and the Hineses' attorney's January 2010 communication with Wells Fargo and NDSC that the Hineses wanted to mediate but that the foreclosure had to be redone, a genuine issue of fact remains as to whether Wells Fargo and NDSC's actions in still seeking the FMP certificate based upon the Hineses failure to elect mediation in writing amounted to a bad faith abuse of the mediation process such that they failed to substantially comply with NRS 107.086.

The majority states that it will not review the argument just considered because the Hineses did not plead it as part of their fraud claim. The fact remains that their chapter 107 claim encompasses this argument. The complaint alleges that Wells Fargo and NDSC "failed to comply with applicable provisions of AB 149 [which enacted the FMP requirements], now incorporated into NRS 107.080, 107.086 and 107.087." It also avers that the 2009 notice of default, the notice of rescission, the notice of sale, the deed upon sale, and the FMP certificate "evidence failures to adhere to the notice provisions required by law and constitute

'substantial irregularities'" supporting vacation of the sale. The Hineses also advanced this argument in opposing the renewed summary judgment motion by maintaining that the foreclosure did not comply with the laws of this state and that a person reviewing the public records could reasonably conclude that the notice of rescission rescinded the 2009 notice of default or both notices of default. Thus, whether the sequence and nature of events render Wells Fargo and NDSC's foreclosure noncompliant with chapter 107 is a fair argument that we should consider on appeal.

Viewing the facts favorably to the Hineses, there are genuine issues of material fact as to whether Wells Fargo, through NDSC, substantially complied with NRS 107.080 and NRS 107.086 and thus summary judgment was improper on their chapter 107 claim. I thus would reverse and remand for the district court to address these substantial compliance issues. *See Las Vegas Plywood & Lumber, Inc. v. D & D Enters.*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982) ("The district court has discretion to determine whether there has been substantial compliance with the statute."); *Schleining*, 326 P.3d at 8 (applying *Las Vegas Plywood*'s substantial compliance rules to chapter 107).

_____, J.
Pickering

cc:    Hon. David A. Hardy, District Judge
      Lemons, Grundy & Eisenberg
      Snell & Wilmer, LLP/Las Vegas
      Tiffany & Bosco, P. A.
      Washoe District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A