139 Nev., Advance Opinion 25

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LV DEBT COLLECT, LLC,<br>Appellant,<br>vs.<br>THE BANK OF NEW YORK MELLON,<br>F/K/A THE BANK OF NEW YORK, AS<br>TRUSTEE FOR THE<br>CERTIFICATEHOLDERS OF CWMBS,<br>INC., CHL MORTGAGE PASS-<br>THROUGH TRUST 2005-02,<br>MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2005-02,<br>Respondent. | No. 84174<br><br>FILED<br><br>AUG 24 2023<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY:_____<br>DEPUTY CLERK |

Appeal from a district court order granting a motion for summary judgment in an action to quiet title. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

VC2 Law and Garrett R. Chase, Las Vegas,
for Appellant.

Akerman LLP and Ariel E. Stern, Natalie L. Winslow. and Nicholas E. Belay, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, CADISH, PICKERING, and BELL, JJ.

23-27669

*OPINION*

By the Court, CADISH, J.:

NRS 106.240 provides that certain liens on real property are automatically cleared from the public records after a specified period of time. In particular, NRS 106.240 provides that a lien that is created by a mortgage or deed of trust on real property is conclusively presumed to be discharged "10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due."

At issue in this appeal is whether a loan secured by real property becomes "wholly due" for purposes of NRS 106.240 when a Notice of Default is recorded as to the secured loan. We conclude it does not. Accordingly, we affirm the district court's judgment, which determined that the deed of trust continues to encumber the real property at issue in this case.[1]

*FACTS AND PROCEDURAL HISTORY*

In 2004, nonparty Nanci Quinnear purchased the subject property. Quinnear financed the purchase with a loan from a bank and executed a promissory note and a deed of trust that secured the note. *See generally Edelstein v. Bank of N.Y. Mellon*, 128 Nev. 505, 286 P.3d 249 (2012) (explaining the interrelation between a promissory note and a deed of trust, as well as what it means to be the beneficiary of a deed of trust). The current beneficiary of the deed of trust is respondent Bank of New York

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.




Mellon (BNYM).[2] The deed of trust contains a provision cross-referencing Quinnear's promissory note wherein she promised to pay off the full loan balance by 2034. The deed of trust also contains a provision stating that in the event Quinnear defaults on her loan obligation, BNYM has the right to provide her notice of such default. As relevant here, that provision further explains that if BNYM provides such a notice, Quinnear has at least 30 days to cure the default, and if she does not do so, BNYM "at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note."

Quinnear defaulted on the loan, and in 2008, BNYM recorded a Notice of Default. The 2008 Notice of Default provided that BNYM "has declared and does hereby declare all sums secured [by the deed of trust] immediately due and payable." Around the same time, Quinnear also defaulted on her homeowners' association (HOA) dues. BNYM did not pursue foreclosure proceedings after recording the 2008 Notice of Default, and in 2011, Quinnear's HOA foreclosed on its "superpriority lien" and acquired the property via credit bid. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 758, 334 P.3d 408, 419 (2014) (explaining that "NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust"), *superseded by statute on other grounds as stated in Saticoy Bay LLC 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 135 Nev. 180, 180, 444 P.3d 428, 429 (2019). At the time of the HOA's foreclosure, however, Quinnear had filed for bankruptcy. It is

---

[2]It is undisputed that the deed of trust was validly assigned to BNYM and that BNYM is the current deed of trust beneficiary. For the sake of clarity, we refer to the bank and any deed of trust beneficiaries that preceded BNYM collectively as "BNYM."

unclear from the record how the bankruptcy case was resolved, but it appears that Quinnear retained ownership of the subject property following the bankruptcy case's closure.

In 2013, appellant LV Debt Collect acquired title to the subject property in two different ways: (1) by a deed from the HOA and (2) by a deed from Quinnear.[3] LV Debt Collect then filed this quiet title action in 2016, seeking a declaration that the HOA's foreclosure sale extinguished BNYM's deed of trust and that LV Debt Collect held an unencumbered ownership interest in the property.

In 2020, LV Debt Collect and BNYM filed competing motions for summary judgment, with the overarching issue being the legal effect of the HOA's foreclosure sale, given that it was conducted in violation of the automatic bankruptcy stay. *See SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 135 Nev. 346, 349, 449 P.3d 461, 464 (2019) (recognizing that foreclosure sales conducted in violation of the automatic bankruptcy stay are void unless the stay is retroactively annulled).[4] Before those motions were resolved, however, the district court granted LV Debt Collect leave to file an amended complaint asserting a declaratory relief claim based on NRS 106.240—that the 2008 Notice of Default made the loan secured by BNYM's deed of trust "wholly due," such that by 2018, the deed of trust was extinguished as a matter of law.

---

[3]The circumstances surrounding the deed from Quinnear to LV Debt Collect are unclear. However, BNYM does not appear to dispute that this deed was effective to transfer whatever interest Quinnear had in the subject property to LV Debt Collect.

[4]LV Debt Collect attempted repeatedly to obtain a retroactive annulment of the bankruptcy stay, but the bankruptcy court rejected those attempts.

(O) 1947A

The district court heard and ruled on the parties' competing summary judgment motions pertaining to LV Debt Collect's original complaint. In doing so, the district court concluded that "[a]ll persons or entities who were purportedly granted title or an interest in the property through the HOA sale or subsequently obtained title from the HOA, including [LV Debt Collect] have no valid interest in the property." Thereafter, LV Debt Collect filed a motion for reconsideration arguing, among other things, that the district court overlooked the legal significance of the deed from Quinnear and that, despite the HOA's foreclosure being void, LV Debt Collect still had standing to assert its declaratory relief claim in its amended complaint. Notwithstanding its determination that LV Debt Collect had no valid interest in the property, the district court granted LV Debt Collect's motion in part and allowed LV Debt Collect's NRS 106.240 claim to proceed.

A second round of summary judgment motion practice ensued, wherein the parties raised competing arguments as to the applicability of NRS 106.240. Thereafter, the district court entered an order granting summary judgment for BNYM, reasoning that the 2008 Notice of Default did not make the loan "wholly due" for purposes of NRS 106.240, such that BNYM's deed of trust continued to encumber the subject property. This appeal followed.

## DISCUSSION

We review de novo a district court's decision to grant summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). In this case, no genuine issues of material facts exist, and the primary issue presented is the interpretation of NRS 106.240, which is a

legal issue that we also review de novo. *Williams v. United Parcel Servs.*, 129 Nev. 386, 391, 302 P.3d 1144, 1147 (2013).

Before addressing NRS 106.240, we must first address the district court's determination in its first summary judgment order that LV Debt Collect has no interest in the subject property. We agree with LV Debt Collect that the district court erred in this respect. LV Debt Collect has an interest in the property by virtue of the deed it received from Quinnear. But to the extent that LV Debt Collect contends there are questions of material fact as to whether it holds unencumbered title to the subject property by virtue of the deed it received from the HOA, those arguments are meritless. Namely, it is undisputed that the HOA conducted its foreclosure sale (and obtained the property via credit bid at that sale) in violation of the automatic bankruptcy stay, which rendered the sale void. *SFR Invs.*, 135 Nev. at 349, 449 P.3d at 464; *see also Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 134 Nev. 604, 612, 427 P.3d 113, 121 (2018) ("A party's status as a [bona fide purchaser] is irrelevant when a defect in the foreclosure proceeding renders the sale void."). Accordingly, LV Debt Collect has standing to raise its NRS 106.240 argument solely by virtue of the deed it received from Quinnear. *See Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986) (observing that this court considers appeals only when a "justiciable controversy" between the parties exists and that a lack of standing precludes the existence of a justiciable controversy).

Turning to NRS 106.240, that statute provides that certain liens on real property are discharged by operation of law ten years after the related debt becomes "wholly due." The statute reads in its entirety as follows:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property,

SUPREME COURT
OF
NEVADA

(O) 1947A

6

appearing of record, and not otherwise satisfied and discharged of record, *shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due,* terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

(Emphasis added.)

LV Debt Collect contends that language in the 2008 Notice of Default made the debt secured by BNYM's deed of trust wholly due for purposes of NRS 106.240. The relevant language states that BNYM "has declared and does hereby declare all sums secured [by the deed of trust] immediately due and payable." Thus, according to LV Debt Collect, it is now "conclusively presumed that the debt [secured by BNYM's deed of trust] has been regularly satisfied and the lien discharged."

We disagree and are instead persuaded that BNYM's proffered reading of NRS 106.240 is more consistent with the statute's plain language. *See Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007) ("[W]hen a statute's language is plain and its meaning clear, the court will apply that plain language."). In particular, as BNYM observes, NRS 106.240 plainly states that a debt "become[s] wholly due" only "according to" either of two things: (1) the "terms thereof," referring to the mortgage or deed of trust, or (2) "any recorded written extension thereof." Thus, when there is no recorded extension of the due date, the terms of the mortgage or deed of trust dictate when the debt becomes wholly due. As mentioned previously, the deed of trust's terms include a discretionary acceleration

clause.[5] That clause provides that BNYM could exercise its option to "accelerate full payment of the Note" only if Quinnear failed to cure a default after being given notice of the default and at least 30 days to cure the default. Thus, the deed of trust's terms permit BNYM to accelerate the loan only if Quinnear failed to cure the default after being given notice of that default and at least 30 days to cure it.[6] The Notice of Default satisfied

[5]The at-issue provision in the deed of trust provides as follows:

22: Acceleration, Remedies. Lender shall give notice to [Quinnear] prior to acceleration following [Quinnear's] breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to [Quinnear], by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform [Quinnear] of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of [Quinnear] to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law.

[6]Citing *SFR Investments Pool 1, LLC v. U.S. Bank N.A.*, 138 Nev., Adv. Op. 22, 507 P.3d 194 (2022), LV Debt Collect suggests that this court already held that recording a Notice of Default renders a loan wholly due. We disagree. *See Liu v. Christopher Homes, LLC*, 130 Nev. 147, 151, 321 P.3d 875, 877 (2014) (observing that this court reviews de novo the interpretation of its previous opinions). Although we observed in dicta that

the notice-and-cure preconditions in the acceleration clause, but the Notice of Default could not itself accelerate the loan under the terms of the acceleration clause because BNYM could not exercise that option until Quinnear failed to cure the default by the date specified in the Notice of Default. Moreover, even if a deed of trust has an acceleration clause that authorizes the lender to accelerate a loan via a Notice of Default, such language would be invalid because NRS 107.080(2)-(3) requires a Notice of Default to give a borrower 35 days to cure the default, which is antithetical to the concept of "accelerating" a loan.[7] *See SFR Invs. Pool 1, LLC v. U.S. Bank N.A.*, 138 Nev., Adv. Op. 22, 507 P.3d 194, 198 & n.6 (2022) (observing that publicly recorded documents must be interpreted in a manner that harmonizes them with statutory provisions). Consequently, despite BNYM's 2008 Notice of Default arguably containing language purporting to accelerate the loan (i.e., BNYM "has declared and does hereby declare all sums secured [by the deed of trust] immediately due and payable"), the deed of trust's terms did not permit BNYM to do so. Therefore, under NRS 106.240's plain language, the 2008 Notice of Default did not trigger the statute's 10-year time frame.

In addition to being consistent with NRS 106.240's plain language, that conclusion also furthers the statute's purpose. *Cf. City of Reno v. Yturbide*, 135 Nev. 113, 115-16, 440 P.3d 32, 35 (2019) ("Where the

---

recording a Notice of Default might be sufficient to accelerate a loan, we also expressly "decline[d] to definitively resolve" the issue. *SFR Invs.*, 138 Nev., Adv. Op. 22, 507 P.3d at 195 n.2.

[7]We note that the acceleration clause in Quinnear's deed of trust provides for at least a 30-day cure period, whereas NRS 107.080(2)-(3) requires a Notice of Default to provide a 35-day cure period. We are not called on to address this difference here.

language of the statute is plain and unambiguous, a court should not add to or alter the language to accomplish a purpose not on the face of the statute or apparent from permissible extrinsic aids such as legislative history or committee reports."). Namely, NRS 106.240 is Nevada's ancient-mortgage statute, the purpose of which "is to permit . . . purchasers and encumbrancers, in appraising the title [to property], to ignore mortgages whose maturity exceeds the statutory period." Nancy Saint-Paul, *Clearing Land Titles* § 6:5 (3d ed. 2022); *see also id.* §§ 6:6-6:50 (compiling other states' ancient-mortgage statutes and cases interpreting them). In other words, the purpose of NRS 106.240 is to "clear[ ] titles of old and obsolete mortgages" without the need for a prospective purchaser or encumbrancer to file a quiet title action. *Town of Pembroke v. Gummerus*, No. 311622GHP, 2008 WL 2726524, at *9 (Mass. Land Ct. July 15, 2008). It should go without saying that a deed of trust that is the subject of pending litigation "is neither obsolete nor inactive," *LBM Fin. LLC v. Shamus Holdings, Inc.*, No. CIV. 09-11668-FDS, 2010 WL 4181137, at *4 (D. Mass. Sept. 28, 2010), and LV Debt Collect's proffered interpretation of NRS 106.240 would lead to litigation incongruous with the statute's purpose. *See Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521 (1998) (observing that statutory interpretation should avoid absurd results).

Indeed, as BNYM observes, under LV Debt Collect's proffered interpretation of NRS 106.240, property owners would be incentivized to "engage in run-out-the-clock gamesmanship" by instituting litigation over a Notice of Default and prolonging the litigation until NRS 106.240's 10-year period expires. Relatedly, the Legislature repeatedly amended NRS 107.080—Nevada's statute regarding Notices of Default—in the wake of the late-2000s financial crisis and the ensuing onslaught of foreclosures

throughout Nevada.[8] It stands to reason that if the Legislature intended for a Notice of Default to trigger NRS 106.240's 10-year time frame, it would have amended NRS 107.080 to eliminate the 35-day cure period and, more importantly, add Notices of Default to NRS 106.240's list of documents that can render a loan "wholly due." *Cf. Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. 484, 488, 327 P.3d 518, 521 (2014) (recognizing the canon of statutory construction that a legislature's inclusion of certain things in a statute implies a conscious decision on the legislature's part to exclude other things). Instead, a deed of trust can only be presumed satisfied under NRS 106.240 when ten years have passed after the last possible date the deed of trust is in effect, as shown by the maturity date on the face of the deed of trust or any recorded extension thereof, rather than a document like a Notice of Default that can sometimes have multiple iterations, recordings, rescissions, and other circumstances that would not give the clarity to property records this statute was designed to bring. *Cf. LDG Golf, Inc. v. Bank of Am. N.A.*, No. 83056, 2022 WL 6838390, at *1 (Nev. Oct. 11, 2022) (Order of Affirmance) (addressing a circumstance where multiple Notices of Default were filed and only one was rescinded, thereby creating, rather than alleviating, confusion in the property records).

---

[8]*See* 2009 Nev. Stat., ch. 247, § 1, at 1005; 2009 Nev. Stat., ch. 364, § 2, at 1755-56; 2009 Nev. Stat., ch. 443, § 5, at 2482; 2009 Nev. Stat., ch. 484, § 7, at 2790-91; 2010 Nev. Stat., ch. 10, at 79; 2011 Nev. Stat., ch. 81, § 9, at 332-36; 2011 Nev. Stat., ch. 511, § 1, at 3511; 2011 Nev. Stat., ch. 513, § 6, at 3536-58; 2011 Nev. Stat., ch. 525, § 2, at 3656; 2013 Nev. Stat., ch. 302, § 1, at 1419-20; 2013 Nev. Stat., ch. 330, § 5, at 1549-50; 2013 Nev. Stat., ch. 403, § 17, at 2197; 2015 Nev. Stat., ch. 316, § 4, at 1617-19; 2015 Nev. Stat., ch. 517, § 1.5, at 3317, 3320-22; 2017 Nev. Stat., ch. 571, § 1.5, at 4085-91; 2019 Nev. Stat., ch. 238, § 9, at 1352-56.

Finally, even if recording a Notice of Default could render a loan wholly due, the 2008 Notice of Default in this case was not sufficient to do so. Namely, this court has held that acceleration of a debt must "be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention." *Clayton v. Gardner*, 107 Nev. 468, 470, 813 P.2d 997, 999 (1991) (quoting *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988)). Here, although the 2008 Notice of Default stated that BNYM "does hereby declare all sums secured [by the deed of trust] immediately due and payable," the Notice also provided that Quinnear could cure the default "upon the payment of the amounts required by [NRS 107.080] without requiring payment of that portion of the principal and interest which would not be due had no default occurred." Given this conflicting language, we conclude that the 2008 Notice of Default was not "so clear and unequivocal" as to "leave[ ] no doubt as to [BNYM's] intention." *Clayton*, 107 Nev. at 470, 813 P.2d at 999. Accordingly, and for that additional reason, the 2008 Notice of Default did not trigger NRS 106.240's 10-year time frame.

In sum, the secured debt here did not become wholly due when the Notice of Default was recorded in 2008 for any and all of the following reasons: (1) a Notice of Default is not identified in NRS 106.240 as a document that can render a secured loan "wholly due" for purposes of triggering the statute's 10-year time frame, (2) Nevada law requires a cure period following a Notice of Default before acceleration of the entire outstanding debt, and (3) acceleration can only occur if its exercise is clear and unequivocal, and the Notice of Default's purported acceleration language was not sufficiently clear and unequivocal here. The district court therefore correctly determined that BNYM's lien has not been discharged

SUPREME COURT
OF
NEVADA

(O) 1947A

by operation of law and that the deed of trust continues to encumber the subject property. Accordingly, we affirm the district court's judgment.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Bell